## REGESTER et al. v. LANG.
### No. 1346—5895.

Commission of Appeals of Texas, Section B.
May 16, 1932.

Callicutt & Upchurch and Taylor & Howell, all of Corsicana, for plaintiffs in error.

Richard & A. P. Mays, of Corsicana, for defendant in error.

LEDDY, J.

Defendant in error perfected a rotary drilling bit for use in drilling oil wells, which he, and others experienced in the use of this type of appliance, believed to be revolutionary in nature. Subsequently he applied for a patent upon the device.

Plaintiff in error Regester brought this suit against defendant in error, Lang, claiming that he had been employed to find a purchaser for a $^{10}\!/_{57}$ interest in the patent to this drilling bit for a consideration of $5,000, and that for his services in this respect Lang was to convey to him a $^5\!/_{57}$ interest in said patent. It was averred that he found a purchaser in one H. H. Roberts, who was ready, able, and willing to purchase the $^{10}\!/_{57}$ interest in said patent and pay therefor the sum of $5,000. His prayer was for specific performance of his alleged contract with Lang. Pending the suit, he caused a temporary injunction to be issued restraining defendant in error from disposing of his interest in said patent or making any contract with reference thereto pending the litigation.

A separate suit was brought by plaintiff in error H. H. Roberts against the defendant in error, in which he sought to compel the latter to convey to him a $^{10}\!/_{57}$ interest in said patent for the sum of $5,000; it being alleged that he had purchased such interest under an oral contract with defendant in error's agent, Regester. These separate cases were consolidated and tried as one suit.

Upon a trial on the merits a jury found, in answer to special issues, that defendant in error, Lang, did not make the contract relied upon by Regester and Roberts, and also found that the injunction caused to be issued by Regester was wrongfully issued, and the resultant damages to Lang were fixed at $500. Upon these findings judgment was entered that both plaintiffs in error take nothing, and defendant in error was awarded a judgment for $500 against plaintiff in error Regester. The judgment was affirmed by the Court of Civil Appeals, from which this writ of error has been prosecuted.

Plaintiff in error Roberts tendered in his pleadings the amount which he claimed he agreed to pay for the $^{10}\!/_{57}$ interest in the patent, and averred his readiness and willingness to pay the same. Before the trial defendant in error filed a motion to require the said Roberts to pay into the registry of the court the sum of $5,000, tendered in his pleadings. This motion was overruled, the court stating at the time that this matter would be taken care of in the judgment which might be entered subsequently in the case.

Plaintiffs in error urge that this cause should be reversed because of improper remarks made by defendant in error's counsel in his closing argument to the jury. The argument complained of was as follows: "The suit of these plaintiffs, in my opinion, is a deliberate frame-up between Regester and Roberts, born after they found out the value of this patent, to tie up old man Lang and compel him to compromise an unfounded claim and surrender to them an interest in a valuable patent and properties without themselves putting up one dollar or taking any risks whatever. This man Roberts, the investment banker from Dallas, has refused to pay one dime to old man Lang or to deposit the $5,000.00 that he promised to deposit, in the Court. Gentlemen of the Jury, what assurance has Lang that Roberts will ever pay one dime of the consideration that Roberts claims he was to pay for this patent interest, and property and you have no right to assume that he will do so. He (meaning Roberts) has refused to pay one dollar of what he himself claims he was to pay and has refused to deposit the money in the custody of the Court. Gentlemen, if you decree a specific performance of this verbal contract of sale, these plaintiffs will have Lang's hands tied without having paid one dollar's consideration."

The honorable Court of Civil Appeals refused to consider the assignment complaining of this argument because the bill of exception failed to negative that the argument complained of was not provoked by argument of opposing counsel. It is not necessary under the rules that the bill should negative such fact. Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 39 S.W.(2d) 1091; Texas Ind. Ins. Co. v. McCurry (Tex. Com. App.) 41 S.W.(2d) 215.

It is shown that, when the above argument was made, plaintiffs in error's counsel promptly objected thereto. The court, however, took no action upon such objection. Thereafter, and before the retirement of the jury, plaintiffs in error requested the court to give to the jury the following instruction: "In view of the argument of counsel for defendant C. Eugene Lang in the presence of the jury, and at the request of counsel for plaintiffs, you are instructed that the defendant Lang, having refused to perform the alleged contract, as contended for by plain-

tiffs, it was unnecessary for plaintiff H. H. Roberts to pay into the registry of the Court, or tender in cash to said Lang the $5,000.00 for $10\frac{9}{57}$ths interest in the Rotary-Bit and Machine Shop, but that the question of tendering the payment of $5,000.00 into court is a matter for the Court to decide and not for the jury."

The court refused this charge, and no instruction, either verbal or written, was given by the court in connection with the argument complained of.

We think this argument was improper and of such a nature as to be reasonably calculated to prejudice plaintiffs in error's rights before the jury.

In the first place, the question of tender was not properly an issue before the jury. It was unnecessary for plaintiff in error Roberts to prove a tender of the amount agreed to be paid in view of the fact that defendant in error denied the making of the contract alleged by Roberts, and admittedly refused to perform the same. He denied in the most positive manner that he ever authorized Regester to sell the $10\frac{9}{57}$ interest for the sum of $5,000. He testified that he did authorize him at one time to sell a $\frac{1}{10}$ interest in the rotary bit for the sum of $5,000, which offer he claims was subsequently withdrawn before any purchaser was procured. He was very positive in his testimony that this was the only contract he ever made with Regester. He admitted that he refused to convey Roberts a $10\frac{9}{57}$ interest in the patent when Roberts informed him that he had purchased the same from his agent, Regester.

It was therefore unnecessary for Roberts to make formal tender to defendant in error before suit. Such a tender would have been a vain and useless thing. It is thoroughly settled that where a defendant has openly and avowedly refused to perform his part of a contract, or declared his intention not to perform it, a plaintiff need not make tender of payment of the consideration before bringing suit. It is sufficient if he is ready and willing and offers to perform in his pleadings. Pomeroy on Specific Performance of Contracts, § 361, p. 768, and authorities there cited.

Neither was it necessary for Roberts to deposit into the registry of the court the amount which he claimed he agreed to pay for the $10\frac{9}{57}$ interest in Lang's patent, as he would be required under a proper decree of specific performance to pay this sum before he could obtain any interest in the patent.

Prior to the trial of this case the court had refused to require Roberts to deposit the $5,000 into the registry of the court. Notwithstanding this fact, counsel was permitted to argue to the jury that Roberts had refused "to pay one dime to old man Lang or to deposit the $5,000 that he promised to deposit in court." Not only this, but the jury were told in this argument of counsel that Lang had no assurance that Roberts would ever pay one dime of the alleged consideration that he agreed to pay for this patent, and that the jury should not assume that he would do so. This argument carried the veiled intimation that, if the jury answered the questions submitted in such a way as to entitle Roberts to a decree for specific performance, such performance might be compelled without Roberts paying the consideration therefor, when as a matter of fact the decree of the court for specific performance would have fully protected Lang's interest by requiring the payment of the consideration as a condition to the relief awarded.

The court by its ruling had already held that Roberts was under no legal obligation to deposit the $5,000 in court. This being true, counsel for defendant in error should not have been permitted to make capital of this fact before the jury. Roberts was held up to the jury as breaching a promise to deposit money into court merely because he had made the necessary formal allegations of tender in his pleadings. The argument was reasonably calculated to cause the jury to believe that, if they so answered the question as to entitle Roberts to a specific performance of the contract, Lang's patent would be tied up for an indefinite period of time without his being paid $1 of the agreed consideration. This argument was specially calculated to be hurtful when the fact is taken into consideration that a jury of laymen are not familiar with the method by which the court would protect Lang's interest in a decree for specific performance. Any honest juror would naturally hesitate to render a verdict which he believed would operate to take another man's property or tie it up indefinitely without the payment of any compensation. The court in this case, in rendering a decree of specific performance, would not have permitted any such injustice to have been perpetrated; hence the jury should have been instructed to disregard this argument and informed that specific performance would only be decreed against Lang upon condition of payment of the agreed consideration.

But one other assignment is presented by plaintiffs in error. They complain of the submission by the court of special issue No. 5 and the instruction following same. This issue reads as follows: "Issue No. 5: What sum of money, if paid now in cash, will reasonably compensate the Defendant, C. Eugene Lang, for damages, if any, suffered by him financially, if any, by reason of the issuance of an injunction in this cause, which was procured by H. W. Regester? Answer in 'Dollars.'"

In connection with this issue the court gave this instruction: "You are instructed that in answering Issue No. 5, the measure of

damages, if any, suffered by the defendant, would be the amount of money that the defendant would have realized from the net sales of any of the rotary bits that would have been manufactured between August 3rd and this date, if any."

The specific complaint made against the submission of this issue is that it authorized the jury to find damages in favor of defendant in error from August 3, 1929, the date the injunction was issued, to the date of the trial, notwithstanding that defendant in error had voluntarily contracted away any anticipated profits from the manufacture and sale of the patented devices for a portion of said period of time.

The contract upon which this contention is based was made by defendant in error on June 5, 1929, with the Guiberson Corporation. Under this contract it was agreed that said corporation was given thirty days to determine the scope of the patents that could be obtained on the drilling bit and an additional thirty days to make certain field drilling tests with this appliance. It was given the right at any time within the sixty days allowed to enter into a license agreement with Lang to manufacture this bit by the payment to him of certain specified royalties.

In our opinion there is nothing in the contract with the Guiberson Corporation which would have prevented Lang from having the drilling bits manufactured pending the decision of that company as to whether it desired to avail itself of the privilege of entering into a license agreement with him for the exclusive right to manufacture and sell these devices. But we think the terms of the injunction were such that it prevented Lang from having these bits manufactured during the time that the Guiberson Corporation had under consideration the question as to whether it would enter into said license agreement with him. We think this fact becomes apparent when we consider the terms of the temporary injunction granted on August 3, 1929. It was very broad in its scope and prevented Lang from "selling, assigning, transferring, or in any manner disposing of said devices, patent, or personal property, or any interest therein or rights thereunder and from granting in any manner any rights for the manufacture, sale, or distribution thereof."

It is true that this injunction was somewhat modified on the 24th day of August, 1929, when Lang's motion to dissolve the same was overruled. The new order entered restrained Lang from "selling, assigning, transferring, disposing of, or in any wise incumbering a $15/57$ interest in this patent," and he was further restrained from "giving, granting, or in any way negotiating any contract for the exclusive manufacture, sale, or distribution of said device." He was also enjoined from negotiating for the use of his machine shop and the machinery connected therewith in the manufacture of such devices.

We think the restraint imposed upon defendant in error sufficient to effectively prevent him from arranging for the manufacture and sale of these bits during the time the injunction was in force. That defendant in error, if not restrained, could have made contracts for the manufacture and sale of this device, and realized a profit thereon from August 3, 1929, to the date of the trial, was supported by evidence; hence such issue was properly submitted for the determination of the jury.

For the reasons indicated we recommend that the judgment of the trial court and Court of Civil Appeals be reversed, and this cause remanded for another trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.