**Harold R. SHULER, Petitioner,**

v.

**John T. GORDIN, Respondent.**

**No. C–1196.**

Supreme Court of Texas.

Nov. 3, 1982.

On Rehearing Dec. 8, 1982.

Dalton, Moore, Forde, Joiner & Stollenwerck, Thomas K. Boone, Dallas, for petitioner.

Golden, Potts, Boeckman & Wilson, George Garrison Potts and Beverly Brown, Dallas, for respondent.

BARROW, Justice.

This is a suit for specific performance of a contract to purchase an apartment complex in Dallas. The apartment was owned by respondent, John T. Gordin, and was subject to a lien held by Boston Mutual Life Insurance Company securing payment of a note in the sum of $213,000. The contract between Gordin and petitioner, Harold R. Shuler, Trustee and/or Assigns, provided that it was subject to Boston Mutual's consenting to a subordinate deed of trust. The purchasers were to execute this deed of trust to secure a wrap-around note for the remaining $306,720 balance of the $432,000 purchase price.

The jury found written approval was timely obtained from Boston Mutual, and the trial court rendered judgment on the jury verdict ordering specific performance of the contract. The court of appeals held as a matter of law the condition precedent requiring written approval was not performed. It reversed the trial court judgment and rendered a take-nothing judgment, 635 S.W.2d 559. We reverse the judgment of the court of appeals and affirm the trial court's judgment.

The contract signed by Gordin on April 28, 1979 provides in part:

This contract is subject to the following:

1.(b) Obtaining written approval of the Boston Mutual Life Insurance Company . . . consenting to conveyance of the premises to Purchaser and consenting to execution of the subordinate deed of trust securing the wrap-around note contemplated to be executed upon closing.

. . . .

2. The Closing shall take place . . . within ~~20~~ 33 days after approval of Seller's title by the title company (but not earlier than 30 days after the date of execution hereof by seller) and, at all events, shall close on or before 90 days after such date.

The parties agree that "written approval" of the wrap-around is a condition precedent. *See Hohenberg Brothers Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). Shuler urges that written approval was given by Boston Mutual in a letter dated July 25, 1979 from John R. McGovern, a mortgage officer of Boston Mutual, to Ms. Nel Gurley of Glenn Justice Mortgage Co., Inc., Boston Mutual's Dallas loan servicing agent.

■ Gordin asserts this written approval was not timely given by Boston Mutual because it was received more than 90 days after Gordin had executed the contract. This argument fails for several reasons.

The contract is unclear whether the ninety day limitation on closing has reference to the date of execution of the contract by Gordin or the date of approval of his title by the title company. Irrespective of the reference date, the jury found that written approval was obtained within ninety days of both dates. Furthermore, the jury found time was not of the essence of the contract and written approval of Boston Mutual was obtained within a reasonable time. The contract neither expressly provides that time is of the essence, nor designates a definite, ascertainable date for closing. *See Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Laredo Hides Co., Inc. v. H & H Meat Products Co., Inc.*, 513 S.W.2d 210, 216 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Therefore, the trial court properly submitted the issue to the jury and there is evidence to support the jury findings that written approval was obtained by Shuler within a reasonable time.

■ Gordin asserts, in any event, the letter of July 25 did not constitute "written approval" as required by the contract because it contained additional terms and conditions. The letter provides in part:

> Pursuant to the request of Mr. Harold R. Shuler and Mr. Louis G. Reese, our Finance Committee approved the transfer of the property from Mr. Gordin to Messrs. Reese and Shuler. The terms and conditions of the approval are as follows:
> 1. Mr. Gordin would remain personally liable and would agree to all changes.
> 2. Messrs. Reese and Schuler [sic] will assume the obligation of our mortgage and will also be personally liable for the loan amount. A suggested assumption agreement is being sent to our attorney.
> 3. The interest rate of the note is to be modified to 10% or such rate which in the opinion of our attorney would not exceed any usury statute in the state of Texas.
> 4. New UCC–1 financing statements are to be signed by the borrowers and filed.
> 5. A new insurance policy will be provided us showing our mortgage interest.
> 6. A copy of the deed of conveyance should be provided us for our file.
> 7. Our attorney, James Blanchette, will prepare and be satisfied with all documents. His fees and expenses in this matter will be paid by the borrowers.

Specifically, Gordin complains that conditions 2 and 3 nullify Boston Mutual's written approval of the contract.

Shuler and Louis G. Reese have been partners in Shuler-Reese Company since 1974 and jointly entered into this deal with Gordin. Both testified unequivocally that they were willing to be personally liable on the wrap-around note. Gordin, however, points out that their commitment to personal liability was oral, and thus not binding on either party. A written commitment was not required until the closing papers were prepared and executed. We conclude that this uncertainty was a fact for the jury to consider in connection with its finding that written approval was obtained.

■ Gordin's original note to Boston Mutual provided for interest at the rate of nine and a quarter per cent per annum. Boston Mutual required that the interest rate be increased to ten per cent upon transfer of the property to Shuler and Reese. This increased rate of interest would expose Gordin to greater liability in the event Shuler and Reese defaulted on the wrap-around note. Recognizing this possible exposure, Shuler and Reese offered to escrow an amount equal to Gordin's maximum potential liability for the increased interest rate. This evidence supports the jury finding that Shuler was willing and able to satisfy and hold Gordin harmless from all of the financial conditions imposed by the July 25, 1979 letter.

■ Finally, Gordin urges that Boston Mutual's written approval fails because it was based upon the understanding that Shuler and Reese would pay cash for the

$125,000 down payment. Actually, Shuler and Reese wanted to borrow this sum from their bank and secure that loan with a subordinate third lien. McGovern testified that this would not have been acceptable to Boston Mutual. Under the terms of the proposed wrap-around note and deed of trust, the approval of Boston Mutual would have been required before a subordinate lien could be created on the property. Both Shuler and Reese, however, testified they were willing and able to pay cash for the down payment if Boston Mutual objected to the third lien. This testimony was uncontroverted and supports the jury finding that Shuler and Reese were willing and able to pay the $125,000 without creating a third lien.

We disagree with the conclusion of the court of appeals that written approval was not obtained from Boston Mutual as a matter of law. While many of the facts are undisputed, the issue of whether the letter of July 25, 1979 constituted written approval was sharply contested. There was evidence from Mr. McGovern and the written minutes of the Boston Mutual Finance Committee that Boston Mutual considered this letter as written approval. There was also evidence that the conditions contained in the letter imposed no additional obligation upon Gordin. The trial court properly submitted these issues to the jury and entered judgment upon the jury verdict.

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

█ Gordin points out by motion for rehearing that his factual insufficiency points of error raised in the court of appeals were not considered by that court. We agree and grant his motion for rehearing in part. Inasmuch as these factual insufficiency points are within the exclusive jurisdiction of the court of appeals, we must remand the cause to that court for determination of such points. *Strange v. Treasure City,* 608 S.W.2d 604, 610 (Tex.1980); *Sagebrush Sales Co. v. Strauss,* 605 S.W.2d 857, 861 (Tex.1980).

We adhere to our judgment of November 3, 1982, which reversed the judgment of the court of appeals. We withdraw that portion of our judgment which affirms the judgment of the trial court and remand the cause to the court of appeals for further proceedings not inconsistent with this opinion. In all other respects, the motion for rehearing is overruled.

ROBERTSON, J., not sitting.