**17090 PARKWAY, LTD., Appellant,**

v.

**David McDAVID, Trustee, and Steve Dieb, Appellees.**

No. 05–00–01362–CV.

Court of Appeals of Texas, Dallas.

June 18, 2002.

Scott A. Scher, Craig A. Morgan, Brown McCarroll, L.L.P., Dallas, for Appellant.

Stephen A. Khoury, Kelsoe Anderson, Khoury & Clark, P.C., Dallas, for Appellees.

Before Justices WHITTINGTON, JAMES, and FITZGERALD.

## OPINION

Opinion By Justice WHITTINGTON.

17090 Parkway, Ltd. (Parkway) appeals the trial court's judgment awarding specific performance of a contract for the sale of real estate. In four issues, Parkway contends generally (i) the trial judge erred in failing to hold that David McDavid was barred from obtaining specific performance because he failed to tender actual performance on the closing date, (ii) the evidence is legally and factually insufficient to support the jury finding that McDavid was ready, willing, and able to tender performance on the closing date, and (iii) the trial judge erred in excluding certain evidence. We affirm the trial court's judgment.

### BACKGROUND

On February 25, 1997, McDavid and William Jefferson Harkinson signed a contract for the sale of an office building. Harkinson is president of Harkinson Investment Corporation which, in turn, is the general manager of Parkway. McDavid agreed to pay $1,200,000. The closing date was March 31, 1997. The contract provided that "time was of the essence." Parkway wanted to close quickly in order

to take advantage of a tax deferred exchange.

■ The contract required Parkway to deliver to McDavid a tenant estoppel certificate by March 23, 1997. A tenant estoppel certificate verifies the current tenant has a good lease and that neither it nor the seller is in default. Parkway was unable to deliver this certificate by the required date. As a result, Harkinson and Steve Dieb, McDavid's agent, orally agreed to extend the contract to April 14, 1997. Their oral agreement was reduced to writing. The written amendment also allowed the contract to be extended to April 30, 1997 upon McDavid's payment of an additional $50,000 earnest money. Despite this written amendment, however, Harkinson allowed McDavid to extend the contract to April 30, 1997 with a $25,000 payment. Harkinson and Dieb offered conflicting testimony as to whether an additional $25,000 payment was still owed.

After the parties extended the contract to April 30, they orally agreed that McDavid could extend the contract to May 30 upon the payment of an additional $75,000 earnest money. On April 30, 1997, Dieb delivered to Harkinson's office a draft amendment memorializing this oral agreement and a $75,000 check. Parkway deposited the check. Harkinson made a few minor changes to the amendment and returned it to Robert Kelsoe, McDavid's attorney. Kelsoe made the changes and gave it to Dieb. The parties never signed the amendment.

On May 13, 1997, McDavid received a letter from Harkinson stating the contract expired on April 30, 1997 and that he was terminating it. McDavid filed suit on May 30, 1997. Following a jury trial, the trial judge awarded specific performance of the contract to McDavid.

SPECIFIC PERFORMANCE

In its first issue, Parkway contends the trial judge erred in granting specific performance. Specifically, Parkway asserts McDavid has no right to specific performance because he failed to tender performance on May 30, 1997. According to Parkway, in order to be entitled to specific performance, McDavid had to appear at closing and pay the purchase price.

### 1. Waiver

■ Where a contract provides that "time is of the essence," performance must occur within the specified time in order to entitle the party to specific performance. *Liedeker v. Grossman,* 146 Tex. 308, 312, 206 S.W.2d 232, 234–35 (1947). However, a "time is of the essence" provision may be waived. *Puckett v. Hoover,* 146 Tex. 1, 6, 202 S.W.2d 209, 212 (1947); *Stevenson v. Adams,* 640 S.W.2d 681, 684 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). Waiver may be shown by course of dealing between the parties. *Stevenson,* 640 S.W.2d at 684; *Seismic & Digital Concepts, Inc. v. Digital Res. Corp.,* 590 S.W.2d 718, 721 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ).

■ McDavid asserts that Parkway waived the "time is of the essence" provision. The jury found that Parkway "waived its right to assert that the purchase contract expired on April 30, 1997." Prior to the original closing date of March 31, 1997, the parties executed a written amendment extending the closing date to April 14, 1997. The amendment also provided that McDavid could extend the closing date to the end of April with an additional $50,000 earnest money. Harkinson allowed the extension to the end of April with a payment of only $25,000 earnest money. Subsequently, the parties orally agreed to an extension to the end of May, and their attorneys prepared an amend-

ment memorializing that agreement. Parkway accepted and deposited McDavid's payment of $75,000 additional consideration for the extension. Harkinson also testified he was aware that the extensions may have resulted in the loss of the tax deferred exchange. Nevertheless, he still wanted to close the sale because he felt that he was receiving an attractive price. Based on the evidence and the jury's answer to Question No. 3, Parkway waived the "time is of the essence" provision in the contract.

### 2. Tender of Performance

■ Assuming, for the sake of argument, that Parkway did not waive the "time is of the essence" provision, we address whether an actual tender of performance was necessary for McDavid to obtain specific performance. McDavid relies on a long-standing rule that where a defendant openly refuses to perform his part of a contract, a plaintiff need not tender performance before bringing suit. *See Regester v. Lang*, 49 S.W.2d 715, 717 (Tex. Comm'n App.1932, holding approved); *Burford v. Pounders*, 145 Tex. 460, 467–68, 199 S.W.2d 141, 144 (1947). Where tender of performance is excused, a party must plead and prove that he is ready, willing, and able to perform. *Chessher v. McNabb*, 619 S.W.2d 420, 421 (Tex.Civ. App.-Houston [14th Dist.] 1981, no writ); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex.Civ.App.-Amarillo 1972, no writ).

In *Burford*, Beaird leased property to Burford. The lease gave Burford the right of refusal of purchase of the land before Beaird sold the property to another person. Without giving Burford the right of first refusal, Beaird sold the property to a third party. *Burford*, 145 Tex. at 462, 199 S.W.2d at 142. The court recognized that a tender by Burford in this situation would have been a "useless act" or "idle ceremony." *Burford*, 145 Tex. at 467, 199 S.W.2d at 144–45. That being so, it was sufficient for Burford to plead that he was ready, willing, and able to pay the consideration. *Burford*, 145 Tex. at 466, 199 S.W.2d at 145.

Parkway relies primarily on *Liedeker* and *Wilson v. Klein*, 715 S.W.2d 814 (Tex. App.-Austin 1986, writ ref'd n.r.e.) to support its assertion that, where a contract provides that time is of the essence, an *actual* tender of the purchase price is necessary. After reviewing these cases, however, we conclude they do not support Parkway's position. In *Liedeker*, the Grossmans signed a contract to purchase land from Liedeker. The contract provided that time was of the essence. The contract also provided that possession of the property was to be given at closing "subject to tenants." Despite this contractual provision, the Grossmans refused to accept the deed subject to the tenant's lease. *Liedeker*, 146 Tex. at 311, 206 S.W.2d at 234. The court held the Grossmans were not entitled to specific performance because they failed to perform under the contract. *Liedeker*, 146 Tex. at 312, 206 S.W.2d at 234. *Liedeker* is distinguishable from our case in two important respects. First, unlike the seller in *Liedeker*, Parkway terminated the contract. Second, unlike the buyers in *Liedeker*, McDavid was ready to perform his full obligations under the contract.

In *Wilson*, Wilson contracted to purchase land from Klein. Again, the contract provided that time was of the essence. A dispute arose under the contract as to the calculation of the purchase price. Wilson sued for specific performance and offered in his pleading to pay the higher price *if* the trial court decided that was proper. *Wilson*, 715 S.W.2d at 819. The court held that Klein's interpretation of

the contract was correct and, therefore, the higher price was due. *Wilson,* 715 S.W.2d at 821. The court further held that to be entitled to specific performance, Wilson had to actually tender the correct purchase price. *Wilson,* 715 S.W.2d at 822. The court recognized and the parties agreed that an actual tender by Wilson would *not* have been a useless act because Klein was prepared to convey the property. *Wilson,* 715 S.W.2d at 822–23. The court suggested Wilson should have tendered the disputed price and then litigated the correctness of that price. *Wilson,* 715 S.W.2d at 823.

Although both *Wilson* and this case involve contracts for the sale of land that include a "time is of the essence" provision, the remaining facts in *Wilson* are starkly different from those presented in this case. Unlike Wilson, McDavid made an unconditional offer in his pleading to pay the full purchase price. Unlike Klein, Parkway terminated the contract and would not have conveyed the property even if McDavid had actually tendered the purchase price. And, unlike the situation in *Wilson,* an actual tender of the purchase price by McDavid in this case would have been a useless act. In light of these factual differences, we conclude *Wilson* is not applicable.

Similarly, the other cases cited by Parkway are factually distinguishable. *See Ferguson v. von Seggern,* 434 S.W.2d 380 (Tex.Civ.App.-Dallas 1968, writ ref'd n.r.e.) (optionee of option contract denied specific performance where he failed to comply with all of obligations under contract); *Riley v. Powell,* 665 S.W.2d 578 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.) (buyer denied specific performance where he tendered deficient payment and seller indicated he would not go through with contract); *Walker v. Cent. Freight Lines, Inc.,* 382 S.W.2d 125 (Tex.Civ.App.-San Antonio

1964, writ ref'd n.r.e) (buyer denied specific performance where performance tendered contravened contract terms and seller refused to accept it). In *Ferguson,* the party seeking specific performance had inexcusably failed to meet his obligations under the contract. In *Riley* and *Walker,* the parties seeking specific performance tendered deficient performances. None of the cases relied upon by Parkway involves a factual situation similar to this case where the buyer was ready, willing, and able to perform but the seller terminated the contract.

In this case, the jury found that Parkway "openly refused to perform its part of the contract" and that McDavid was "ready, willing, and able to perform his obligations under the purchase contract." These two significant factors combined are absent from the cases upon which Parkway relies. We conclude that, despite the "time is of the essence" provision, an actual tender by McDavid was excused. *See Burford,* 145 Tex. at 466, 199 S.W.2d at 144–45. We overrule Parkway's first issue.

### SUFFICIENCY OF THE EVIDENCE

In its second issue, Parkway asserts the evidence is legally and factually insufficient to support the jury finding that McDavid was ready, willing, and able to perform his obligations under the contract on May 30, 1997.

When, as in this case, the appellant challenges the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate that no evidence exists to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). When reviewing the record, we look to see whether any evidence supports the challenged finding. Anything more than a scintilla of evidence is legally sufficient to support the chal-

lenged finding. *Cont'l Coffee Prod. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996).

By contrast, when the appellant challenges the factual sufficiency of the evidence on an issue on which it did not have the burden of proof, the appellant must demonstrate the evidence is insufficient to support the adverse finding. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). In reviewing a factual insufficiency point, we consider, weigh, and examine all the evidence presented at trial. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside a finding for factual insufficiency only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

A party seeking specific performance must plead and prove that he is ready, willing, and able to perform, even though tender of the purchase price may be excused. *Chessher*, 619 S.W.2d at 421; *Hendershot*, 476 S.W.2d at 920. The contract provided that McDavid was to pay the purchase price at closing. GPM, Parkway's lender, approved the prepayment of the loan subject to a nine percent penalty. McDavid, Dieb, and Kelsoe testified that McDavid could have paid the entire purchase price, including the nine percent prepayment penalty, in cash on May 30, 1997. Parkway did not dispute McDavid's financial wherewithal to pay cash for the property.

The contract also gave McDavid the option to assume the GPM loan. McDavid was considering using Dallas North Tollway Partners I, Ltd. (the "Partnership") to assume the loan. McDavid received a letter dated March 14, 1997 stating that GPM had approved the Partnership's assumption of the loan subject to certain conditions. To assume the loan, the Partnership had to provide an assumption agreement, evidence of insurance, and a tax identification number. McDavid also had to pay both an administrative fee and transfer fee. Kelsoe testified that each of these requirements could be done on the day of closing. The other requirements for assumption included a copy of the warranty deed, a UCC–3 amendment, a P9b3 endorsement, and the seller's escrow statement. These items were the responsibility of the title company.

Parkway asserts McDavid was not ready to close because he did not have an agreement with GPM to allow assumption or prepayment of the existing mortgage. Relying on *Chessher* and *Hendershot*, Parkway contends that when performance under a contract is dependent upon the cooperation of a third party, the party seeking specific performance must prove that it had an enforceable agreement with that third party to secure its own performance. *See Chessher*, 619 S.W.2d at 421; *Hendershot*, 476 S.W.2d at 920. In *Chessher*, the contract required the buyer to assume the loan, and there was no evidence that the lender had approved the buyer. *Chessher*, 619 S.W.2d at 421. In *Hendershot*, the evidence showed the buyer could not pay cash for the property and also that he had not obtained a loan. *Hendershot*, 476 S.W.2d at 920–21. By contrast, the contract in this case did not require McDavid to assume the loan. Moreover, the evidence showed that McDavid was ready, willing, and able to pay cash for the property. Neither *Chessher* nor *Hendershot* dealt with prepayment of an existing mortgage.

The jury heard undisputed testimony that McDavid could have closed on May 30, 1997 by payment of the purchase price, including the nine percent prepayment penalty, in cash. Alternatively, the testi-

mony showed that the conditions for assuming the loan could have been met on May 30, 1997. We conclude this evidence is both legally and factually sufficient to support the jury finding that McDavid was ready, willing, and able to close the transaction on May 30, 1997. We overrule Parkway's second issue.

## EXCLUSION OF EVIDENCE

In its final two issues, Parkway complains of the exclusion of certain evidence. It asserts the trial judge erred in excluding evidence that (i) McDavid was unable to close the contract *after* May 30, 1997 and (ii) Dieb provided false deposition testimony.

 Determining whether to admit or exclude evidence is a matter that falls within the trial judge's sound discretion. *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 531 (Tex.App.-Tyler 1992, writ denied). We do not disturb a trial judge's evidentiary ruling absent an abuse of discretion. *Tracy*, 840 S.W.2d at 531. A trial judge abuses his discretion when he acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). If error exists, the party asserting the error has the burden to show the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1). To show harm, the excluded evidence must be controlling on a material issue and not cumulative of other evidence. *See Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex.1995) (per curiam).

 The relevant time for determining whether a party is ready, willing, and able to perform is the original date for performance under the contract. *Texacally Joint Venture v. King*, 719 S.W.2d 652, 653 (Tex.App.-Austin 1986, writ ref'd n.r.e.). The excluded evidence consisted of correspondence between the parties following May 30, 1997. The correspondence related to the parties' continuing efforts to close the sale. Parkway asserts it offered the evidence to show that McDavid was unable to close the deal six weeks after May 30, 1997. Parkway contends this evidence had at least the tendency to show that McDavid was probably not prepared to close on May 30. We disagree. The date for performance was May 30, 1997. The evidence showed and the jury found that McDavid was ready, willing, and able to close on May 30. McDavid's preparedness after that date is irrelevant. *See King*, 719 S.W.2d at 653. For this reason, we conclude the trial judge did not abuse his discretion in excluding this evidence. We overrule Parkway's third issue.

 We turn now to the excluded cross-examination testimony of Dieb. In his deposition, Dieb testified that he had a Texas real estate license. Prior to trial, Dieb corrected that testimony. Parkway sought to use Dieb's original deposition testimony to impeach his credibility. According to Parkway, in deciding whether the parties extended the contract to May 30, all the jury had to rely on was the conflicting testimony of Dieb and Harkinson. This critical issue, according to Parkway, rested on which of these two witnesses the jury found credible. Assuming, without deciding, that the exclusion of this testimony was erroneous, we nevertheless conclude the error was not harmful.

Admittedly, whether the parties agreed to extend the contract to May 30 was a material issue. However, Dieb's testimony as to his oral agreement with Harkinson to extend the deadline was not controlling on this issue. Rather, Dieb's testimony was cumulative of other evidence in support of an agreement to extend. The parties' attorneys, Kelsoe and Phil Franklin, testified

as to their correspondence with one another regarding a draft amendment memorializing the oral agreement between Dieb and Harkinson. Their written correspondence and drafts of the amendment were introduced into evidence. Under these circumstances, we cannot conclude the alleged error resulted in the rendition of an improper judgment. We overrule Parkway's fourth issue.

We affirm the trial court's judgment.