IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0641
════════════
 
Nick DiGiuseppe d/b/a 
Southbrook Development Co. 
and Frisco Master Plan, 
Petitioners,
 
v.
 
Roger Lawler, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 20, 
2005
 
 
            
Justice Green, joined by 
Chief Justice Jefferson, Justice 
O’Neill, and Justice 
Johnson, dissenting. 
 
 
            
The Court requires an innocent buyer, otherwise excused from his 
contractual obligations by the seller’s breach, to nevertheless prove, in a suit 
for specific performance, that he could have fully performed those obligations 
had the seller not breached. ___ S.W.3d at ___. This makes no sense for at least 
two reasons. First, it provides the breaching seller information he was not 
entitled to under the contract. A seller entering into a real estate transaction 
is rarely entitled to know the details of how the buyer intends to finance the 
transaction. At closing, the buyer will either perform or not, and in the latter 
event, the contract will provide remedies for the breach. But if the seller 
breaches the contract before closing and the buyer sues to enforce the deal, the 
Court now says the buyer must prove to a fact-finder, at a trial many months or 
years after the sale was originally supposed to close, that he was, at the time 
specified by the contract, “ready, willing, and able” to perform. Id. at ___. To do 
this, the innocent buyer will necessarily be required to reveal his plan for 
financing the transaction—information a seller generally would not be privy to 
under agreed contract terms. 
            
Second, and perhaps most important, the Court’s holding makes no sense 
because a finding that the buyer was ready, willing, and able to perform at the 
closing time specified in the contract is irrelevant. Although the Court does 
not say what the trial court is supposed to do with such a finding, presumably 
it would order a date for the transaction to close within a reasonable time. But 
what if the buyer was able to close on the original contract date and is unable 
to close on the court-appointed date? The whole exercise is rendered 
meaningless. The only thing that makes sense is to do precisely what the trial 
court did in this case, which is to set a closing date within a reasonable time 
after a finding that the seller breached. While it is true that the buyer might 
gain some benefit by getting a reprieve from the original contract closing date, 
it is just as likely, particularly in light of today’s troubled financial times, 
that he will be worse off and be unable to close. But at least this has the 
virtue of being meaningful and of not placing impractical burdens on an innocent 
party, both features that are lacking in the Court’s rule.
            
The Court’s holding will also tend to severely limit or eliminate 
specific performance as a viable remedy for a seller’s breach of a real estate 
contract. In large transactions, it is doubtful that many non-breaching buyers 
would be willing to subject themselves and/or their investors to open discovery 
of financial portfolios on the question of whether the buyer was sufficiently 
capable of purchasing the property at the time required by the contract. 
Unscrupulous sellers will be virtually immunized from the penalty of specific 
performance, the most severe consequence of breaching a contract of sale, and 
disorder will be the order of the day in volatile real estate markets. Because 
the Court’s holding lacks common sense and adheres to a misreading of our 
precedents, I respectfully dissent.[1] 
            
I agree with the Court that it has long been part of the jurisprudence of 
this state that, to obtain the equitable remedy of specific performance, a party 
must show himself to have been “ready, willing, and able” to timely perform his 
obligations under the contract being enforced. See ___ S.W.3d at ___; 
see also Ratcliffe v. Mahres, 122 S.W.2d 718, 721–22 (Tex. Civ. App.—El 
Paso 1938, writ ref’d) (quoting 4 John 
Norton Pomeroy, Jr., A Treatise on Equity Jurisprudence § 1408, at 2779 
(3d ed. 1905)). But it has likewise been a long-standing Texas rule that a 
non-breaching plaintiff seeking specific performance need only make such a 
showing by offering to perform in his pleadings. Burford v. 
Pounders, 199 S.W.2d 141, 144 (Tex. 1947). The Court’s insistence that a 
party seek and obtain a jury finding that he is ready, willing, and able to 
perform before being entitled to the remedy departs from that rule. 
            
Specific performance is an equitable remedy that rests in the sound 
discretion of the trial court. Kress v. Soules, 261 S.W.2d 703, 704 
(Tex. 1953); 
Am. Apparel Prods., Inc. v. Brabs, Inc., 880 S.W.2d 267, 269 (Tex. 
App.—Houston [14th Dist.] 1994, no writ). Generally, to be entitled to specific 
performance, a party must prove that it has complied with all the contract’s 
terms. Glass v. Anderson, 596 S.W.2d 507, 
513 (Tex. 
1980). When a seller breaches a real estate contract, however, we have long held 
that the buyer need not actually tender the purchase price in order to seek 
specific performance. Ward v. Worsham, 14 S.W. 453, 453 (Tex. 1890). 
The 
practice in equity in similar cases is not to require a tender or a payment into 
court of the purchase money. . . . When [the buyer] pleads his right he should 
offer to pay, and the court, if judgment should be given for him, should decree 
a payment within a reasonable time, and that, in default of a compliance, his 
right should cease and be determined.
 
Id. This 
has remained the law in Texas for well over 100 years, as the Court 
recognizes. See ___ S.W.3d at ___. Until today, however, the Court has 
not required a non-breaching buyer to make the “useless and idle” showing of 
proof of ability to complete the transaction when the seller’s repudiation of 
the contract excused the buyer from tendering the purchase price. See 
Burford, 199 S.W.2d at 145.
            
The issue of a party’s own performance as a condition to obtaining 
specific performance is a matter to be contemplated by the trial court’s 
judgment, not the jury’s verdict. See Regester v. Lang, 49 S.W.2d 715, 
716–17 (Tex. Comm’n App. 1932, holding approved) (holding it was reversible 
error for a defendant to argue to the jury that the plaintiff had not paid the 
purchase money into the court registry, and that specific performance might 
result in the defendant delivering his property without being paid). “It is 
sufficient if [the party seeking specific performance] is ready and willing and 
offers to perform in his pleadings.” Id. at 717. To require anything 
more would be futile because, as this Court recognized in Regester, the 
buyer “would be required under a proper decree of specific performance to pay 
this sum before he could obtain any interest” in the property. Id. 
            
We reiterated these principles in Burford v. Pounders, instructing 
that when a seller has refused to perform and the buyer’s tender would be 
futile, “the material consideration is that [the buyer] offered in his pleadings 
to do equity,” and nothing more is required. 199 S.W.2d at 145. The 
plaintiff Burford was a tenant in possession with an option to buy under a right 
of first refusal. Id. at 141–42. The lessor, 
ignoring Burford’s option, conveyed the property to defendant Pounders. 
Id. 
at 142. Two months after the sale, Burford attempted to exercise his option, 
eventually seeking specific performance. Id. at 142–43. Burford would not 
have been able to make payment at the time of the sale to Pounders, but would 
have been able to pay two months later. Id. at 143–44. Because Burford 
had to exercise the option to buy within a “reasonable time,” the issue in the 
case was whether Burford was required to tender performance within a reasonable 
time of learning of the sale to Pounders, or whether it was sufficient for 
Burford to later offer to perform in his pleadings. Id. at 
144–45. Citing Regester, we again emphasized that all that was necessary 
in such a case is that the party seeking specific performance be ready and 
willing and offers to perform in his pleadings. Id. at 144 
(citing Regester, 49 S.W.2d at 717). And when a party offers in his 
pleadings to do equity, “[t]he only matter remaining to be done by the 
trial court is to direct that payment be made” and that the sale be completed, 
awarding the purchaser judgment for title. Id. at 145 (emphasis added).
            
One statement in Burford, however, appears to have given rise to 
the confusion of the lower courts on this issue. Quoting from Corpus Juris, the 
Court in Burford stated that a “complainant ordinarily is entitled to 
specific performance where he alleges and proves that he . . . is ready, 
able, and willing to perform.” Id. at 144 (quoting 58 C.J. Specific 
Performance § 316 (1932)) (emphasis added). After citing that general rule, 
though, the Court went on to explain the exception that excuses tender for 
non-breaching buyers, citing additional Corpus Juris sections and comments: 
[Regarding 
a specific performance suit brought by a purchaser, under a footnote to section 
342], it is stated that “In Texas” an actual tender “is not necessary where the 
purchaser pleads and proves a willingness to pay, but is entitled to relief 
provided that, within a time fixed in the decree, he shall pay the amount due” . 
. . . In section 348 it is stated that “whatever difference of opinion may exist 
as to the original necessity of a tender of the consideration before suit, . . . 
it appears to be quite well settled that a formal tender is excused where a 
tender would be useless and idle ceremony”; and that a “tender is also excused 
where defendant repudiates the contract”; and further that “tender in pleadings 
(is) sufficient” where plaintiff sets forth that he is ready, able and willing 
“or . . . pays the consideration into the court.” In section 349, . . . it is 
stated that “the necessity of tender is dispensed with where defendant 
repudiates the contract, or makes any declaration which amounts to a repudiation 
. . . . In the following section (350) it is stated that “if a tender of the 
purchase price or other sums before suit is necessary, it is excused where the 
vendor or seller has put it out of his power to perform, as where he has 
conveyed the property . . . to a third person.”
Id. at 
144–45 (emphasis removed). The Court never returned to any discussion of the 
general rule that requires proof of ability to pay, instead holding that the 
seller defaulted and repudiated by selling the property to Pounders. Id. 
at 145. For a non-breaching buyer, “[t]he material consideration is that [he] 
offer[s] in his pleadings to do equity.” Id. The court emphasized this 
rule with italics: “[A]ll that is required in such case is that the plaintiff 
place himself in favor with the court, and this may be done by a proper offer 
in the pleadings.” Id. at 143 (quoting 49 Am. Jur. Specific 
Performance § 144, at 167 (1943)) (italics in original). Because Burford had 
made the sufficient showing by offering in his pleadings to do equity, the Court 
held that Burford was entitled to specific performance. Id. at 145. The 
Court later confirmed that holding, saying that Burford adopted the 
substance of the rule that “if, because of defects in the vendor’s title, which 
he fails or refuses to cure, . . . a tender of performance by the vendee would 
be a useless act . . . , his failure to make such tender will not preclude in 
his behalf the equitable relief of specific performance, at least where he 
tenders performance in his bill or petition.” McMillan v. Smith, 363 
S.W.2d 437, 442–43 (Tex. 1962) (quoting 79 A.L.R. 1240). 
            
Although the Court claims Burford holds that a non-breaching 
plaintiff is required to prove he was ready, willing, and able to perform, and 
somehow distinguishes between tender and proof of ability to pay, the Court 
misrepresents the rule in that case. In Burford, the Court held that when 
a seller repudiates the contract, tender is excused and “all that is required” 
is that the plaintiff offer to do equity, which can be done in the pleadings. 
199 S.W.2d at 143. Burford does not support the Court’s new rule, and 
neither do the other cases relied on by the Court.
            
The Court cites Corzelius v. Oliver, another case involving the 
buyer’s ability to pay within a contractual time limit for exercising an option. 
220 S.W.2d 632, 633 (Tex. 1949). In Corzelius, the plaintiff had a 
one-year option to reacquire lands conveyed to his ex-wife as part of a divorce 
settlement. Id. Although the plaintiff attempted to exercise the option, 
his ex-wife (the defendant) refused because she objected to his source of 
financing, and eventually a jury found for the plaintiff. Id. at 633–34. 
At trial, one of the issues before the jury was whether the plaintiff could have 
made payment within the one-year time limit contemplated by the contract. Id. 
at 634. The jury found that, but for the defendant’s actions, such a payment 
could have been timely made. Id. On appeal, the only issue was the 
defendant’s contention that “there was no evidence to show that Corzelius was 
ready and able to perform within the time limit of the option.” Id. In 
addressing that point, the Court noted that “it would appear but reasonable” for 
Corzelius to show that he could have performed under the agreement, id. 
at 635, and then detailed the evidence to conclude that there was at least some 
evidence to support the jury’s finding in that regard. Id. Certainly, 
taken alone, this part of Corzelius could arguably support an 
interpretation that proof of the ability to pay is an appropriate subject for a 
fact-finder’s consideration in a specific performance case. But such a reading 
is not accurate and has given rise to confusion in the lower courts. Contrary to 
the Court’s conclusion, see ___ S.W.3d at ___, nowhere does 
Corzelius indicate that a non-breaching buyer, under a non-option 
contract, must prove ability to perform at the time specified in the contract 
when tender of payment is excused. Corzelius is distinct from the 
non-option contract case because the timing of the buyer’s ability to pay was 
relevant to whether the buyer had exercised his option to purchase and therefore 
the seller had an obligation to convey the property. Even when a buyer must show 
ability to pay, a buyer need not show a firm financing commitment to be entitled 
to specific performance, but need only put on evidence of his financial capacity 
and creditworthiness. Corzelius, 220 S.W.2d at 635 (recognizing that 
financing sources would probably be reluctant to execute a commitment for 
financing to complete a sale of lands the owner had decided not to convey). 
Notwithstanding the evidence offered at trial and the jury’s finding, “Corzelius 
[was not] bound to do more here than make the tender which was contained in his 
pleadings.” Id. 
            
It appears that misreading of the brief statements in Burford and 
Corzelius led courts of appeals to rule erroneously that a plaintiff 
seeking specific performance must always prove to a fact-finder that he is 
ready, willing, and able to perform under the contract. See 17090 Parkway, 
Ltd. v. McDavid, 80 S.W.3d 252, 256 (Tex. App.—Dallas 2002, pet. denied); 
Chessher v. McNabb, 619 S.W.2d 420, 421 (Tex. Civ. App.—Houston [14th 
Dist.] 1981, no writ); Hendershot v. Amarillo Nat’l Bank, 476 S.W.2d 919, 
920 (Tex. Civ. App.—Amarillo 1972, no writ). Those cases did not offer any 
reasoning as to why proof before a fact-finder is necessary even though actual 
tender is excused when a seller has breached. On this point, 17090 Parkway 
simply cites Chessher and Hendershot. 80 S.W.3d at 256. 
Chessher cites only Hendershot. 619 S.W.2d at 421. Hendershot 
cites only this Court’s decisions in Burford and Corzelius 
without any analysis and without recognizing that those cases involved 
option contracts containing conditions precedent to the seller’s obligation to 
convey the property. See 476 S.W.2d at 920. Hendershot’s 
misreading of Burford and Corzelius therefore resulted in repeated 
error in the courts of appeals, which now repeats itself in this Court, 
eclipsing the long-standing rule that a party seeking specific performance need 
only offer to perform in its pleadings. 
            
Lawler cites a number of cases in support of his position that ability to 
pay must be proven at trial, but I am not persuaded that such a rule exists in 
Texas.[2] As already discussed, the cases requiring 
proof of ability to pay at trial are perpetuating Hendershot’s erroneous 
reading of our opinions in Burford and Corzelius, which did not 
distinguish, as the Court does, between an excused tender requirement and an 
unexcused requirement to prove ability to pay. The Court contends that such a 
distinction is “entirely reasonable,” noting that a party could well offer 
performance but not be capable of performing. ___ S.W.3d at ___. But when the 
seller’s breach relieved the buyer of his obligation to appear at closing and 
perform as required under the contract, it may be impossible for anyone to know 
whether the buyer could have performed. Continued efforts to perform such as 
arranging financing or appearing at the scheduled closing would be useless, just 
as the Court recognizes that tendering payment would be. The Court erroneously 
concludes that ordering specific performance without requiring the non-breaching 
buyer to prove ability to pay at the time required by the contract “grants the 
plaintiff more than he is entitled to under the contract.” Id. at ___. In 
fact, the opposite is true. When a contract provides for simultaneous 
performance by both seller and buyer, the seller must give the buyer the full 
opportunity to perform as provided by the contract, or face remedies for breach 
in cutting off that opportunity. Requiring a buyer to prove that it could have 
performed at a time when the seller’s breach eliminated that obligation and when 
the subject property was under contract for sale to a third party imposes a much 
higher burden on the buyer than the contract requires. The seller’s own breach 
cannot impose an extra-contractual obligation on the buyer to prove useless 
financing commitments. The Court contends that my view would “essentially 
rewrite the parties’ contract” and “eliminate the plaintiff’s contractual 
obligation to be capable of performance at the time the contract required.” ___ 
S.W.3d at ___. In fact, it is actually the breaching seller who altered those 
contractual obligations when he breached the contract by agreeing to sell the 
property to a third party.
            
The Court relies on contracts treatises as support for its claim that 
requiring a non-breaching buyer to prove ability to pay is an entrenched rule in 
Texas jurisprudence. ___ S.W.3d at ___. The author of the primary treatise 
relied on by the Court cites law from various jurisdictions, seemingly favoring 
Montana and Connecticut, but the only citation to Texas law is to a case that 
does not mention or discuss the showing a plaintiff must make to obtain specific 
performance. 25 Richard A. Lord, 
Williston on Contracts § 67:15, at 236–38) (4th ed. 2002); see 
Shuler v. Gordin, 644 S.W.2d 446, 447–49 (Tex. 1982). Edward Yorio’s 
treatise, which states the general rule that a plaintiff must show readiness, 
willingness, and ability to perform, is silent on whether or how a non-breaching 
buyer must make that showing. Edward 
Yorio, Contract Enforcement: Specific Performance and Injunctions § 6.4, 
at 145 (1989 & supp. 2004). Yorio acknowledges the Texas rule in a footnote, 
however, by quoting a Seventh Court of Appeals case holding that “when the 
seller has conspicuously breached the contract, it is only necessary that the 
purchaser be ready and willing, and offers to perform within his pleadings.” 
Id. at n.10 (quoting Abraham Inv. Co. v. Payne Ranch, Inc., 968 
S.W.2d 518, 527 (Tex. App.—Amarillo 1998, pet. denied), which relied on 
Burford, and also citing 17090 Parkway). Comment b to section 363 
of the Restatement (Second) of Contracts, which addresses securing performance 
for an agreed exchange and states that specific performance may be refused if 
“performance is not secured to the satisfaction of the court,” supports the 
long-standing Texas rule: 
The 
desired security can often be afforded by the terms of the order itself. If 
performance by the injured party is already due or will be due simultaneously 
with the performance of the party in breach, the order may be made conditional 
on the injured party’s rendition of his performance. . . . 
 
The 
question of security does not arise until the time for issuance of an order. At 
the pleading stage, a mere allegation by the plaintiff that he is ready and 
willing to perform is usually sufficient in a suit for specific performance or 
an injunction. Actual performance or tender is generally not required.
 
Restatement 
(Second) of Contracts § 363 cmt. b (1981). Because DiGiuseppe need only offer to 
perform in his pleadings to establish his entitlement to specific performance, 
the only disputed fact issue to be resolved by the jury was whether Lawler 
breached the contract. See White v. Sw. Bell Tel. Co., 651 S.W.2d 260, 
262 (Tex. 1983) (holding that only disputed factual issues are presented to the 
jury). 
            
Aside from the doctrinal reasons for this rule, there are important 
policy considerations at stake here. Requiring advance proof of an ability to 
pay puts the breaching seller in a better position than he would have been if 
the deal had gone through as contemplated in the contract by allowing him 
greater security in the solvency of the transaction. Unless the contract 
provides otherwise, sellers must wait until closing to find out whether the 
buyer can and will actually go through with the deal. If a seller suspects that 
a buyer cannot perform, the seller faces a choice: (1) wait until closing to see 
if the buyer tenders the required payment, or (2) breach the contract and face 
remedies for breach. The Court introduces the concept of harmless breach, 
concluding that a seller’s breach “does no harm” when the seller, in advance of 
closing, believes a buyer will not be capable of performing under the contract 
and prematurely eliminates the buyer’s opportunity to complete the transaction. 
___ S.W.3d at ___. But such a breach, which cuts off a buyer’s opportunity to 
show that he is in fact capable of performing at the time performance is due, is 
inherently harmful. 
            
Requiring a non-breaching buyer to demonstrate ability to pay imposes a 
burden on buyers to secure firm funding commitments well in advance of closing 
and disclose funding sources, a burden that typically would not exist in 
transactions performed under a property sales contract. Until today, we have 
never required a non-breaching purchaser to put on such proof. Cf. 
Corzelius, 220 S.W.2d at 635 (explaining that it would not be necessary for 
a purchaser “to produce a firm commitment for an adequate loan” and recognizing 
that “[b]anks, insurance companies, and others loaning money would probably be 
reluctant to execute a commitment for a loan to complete a sale of lands which 
the owner had declared she would not convey”). The sale of property often 
becomes a complex transaction that may involve developers with many properties, 
numerous lenders, investors who may wish to remain confidential until closing, 
and other sources of cash flow that may not come together until the last minute. 
Sellers find out at closing whether a buyer can pay, and buyers need not choose 
a source of financing or secure a financing commitment until shortly before 
closing. See Shuler, 644 S.W.2d at 448 (indicating that the time for 
buyer and seller to show their ability to perform is at closing). I see no 
reason to change this state of affairs simply because a seller has, for whatever 
reason, breached his agreement and forced a non-breaching plaintiff to seek 
judicial enforcement. And, in a case such as this, in which the buyer testified 
that he was ready and able to close when acceptable zoning was approved and 
continued to be ready and able to close, equity demands no more of a 
non-breaching buyer. 
            
Finally, it is entirely possible that a buyer who is ready, willing, and 
able to perform at the time of trial may find his fortunes diminished by the 
time the closing date arrives such that he is no longer able to make payment. 
Just as we do not require tender of payment when it would be a “useless and idle 
ceremony,” we cannot require a showing of ability to perform at the time of 
trial when it, in many cases, would be equally meaningless. See Burford, 
199 S.W.2d at 145. The most efficient way to ensure DiGiuseppe’s payment is not 
to burden the fact-finder with a speculative inquiry into the buyer’s finances 
and potential financing prospects, but rather for the trial court to set a 
prompt closing date, supervised by the court, during which DiGiuseppe may tender 
performance. Only then must DiGiuseppe prove ability to pay, by tendering the 
payment due. If DiGiuseppe is unable to close, Lawler will then be entitled to 
remedies the contract provides. 
            
In my view, once a party has pled the remedy of specific performance with 
sufficient specificity, nothing else is required with regard to ability to pay. 
It is understood that by bringing the action (and undertaking the costs and risk 
involved in such litigation), the party is ready and willing to consummate the 
transaction should the court render judgment in its favor. Here, DiGiuseppe has 
done all that is required.[3] His first pleading in the trial court and 
his cross-petition requested the remedy of specific performance and stated that, 
as soon as acceptable zoning was approved, he was ready, willing, and able to 
satisfy his funding obligations under the contract. DiGiuseppe’s pleadings 
indicated that he “possessed the necessary capital to move forward with the 
acquisition of the Property.” Moreover, during trial, he testified that he was 
ready and able to close after March 7, 2000, the date the city council approved 
acceptable zoning.[4] DiGiuseppe stated that he had three 
homebuilders who would have funded the purchase and that “if there hadn’t been 
another contract in place, [they] would have closed the deal.” Though the Court 
finds DiGiuseppe’s testimony “equivocal and conflicting” because DiGiuseppe did 
not demonstrate that would not have been able to close the transaction on his 
own, ___ S.W.3d at ___, I am satisfied that DiGiuseppe presented at least some 
evidence of his ability, with the help of investors he had secured, to tender 
the money required under the contract.[5] See Corzelius, 220 S.W.2d at 635 
(holding that a buyer is obligated to do no more than offer to perform in his 
pleadings, but a buyer who put on some evidence of creditworthiness and willing 
funding sources sufficiently established ability to pay). Contrary to the 
Court’s suggestion, DiGiuseppe was not required to prove that he had cash in 
hand or that a written financing agreement was in place. DiGiuseppe offered to 
do equity in his pleadings, and he presented some evidence of his willingness 
and ability to perform under the contract. When a seller’s repudiation of a 
contract makes the buyer’s tender of payment useless and excuses that 
requirement, there is no principled reason to impose on the innocent buyer an 
obligation to establish pre-closing funding arrangements, which is not required 
by the contract and has never been required by this Court. DiGiuseppe did all 
that is required to show that he is entitled to the remedy of specific 
performance. I believe that, upon the jury’s finding that Lawler breached the 
contract and DiGiuseppe did not, the trial judge had authority to order specific 
performance. Because the Court holds otherwise, I respectfully dissent. 
 
            
___________________________
            
PAUL W. GREEN
            
JUSTICE
 
 
OPINION DELIVERED: October 17, 
2008






[1] 
In footnote 10, the Court takes the position that DiGiuseppe did not raise or 
argue that he was not required to prove or obtain a finding of fact that he was 
ready, willing, and able to perform, suggesting that such an argument should not 
be addressed in this dissent. ___ S.W.3d at ___. Yet that is the basis for the 
court of appeals’ decision, ___ S.W.3d ___, ___, and the Court provides 
exhaustive discussion on this very issue in its opinion. Id. at ___. In 
the first issue raised in his petition for review, DiGiuseppe claims that “[t]he 
court of appeals erred in reversing the trial court’s award of specific 
performance to DiGiuseppe.” I believe, as the Court appears to, that 
DiGiuseppe’s issue sufficiently raised the question of whether Texas law 
requires such proof from a non-breaching buyer.

[2] 
See Kress, 261 S.W.2d at 704 (recognizing that specific performance is an 
equitable remedy); 17090 Parkway, 80 S.W.3d at 256 (relying on erroneous 
and distinguishable courts of appeals’ cases, as explained above); Lazy M. 
Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d 678, 683 (Tex. App.—Austin 
1998, pet. denied) (rejecting specific performance because the buyer breached 
the contract and had unclean hands); Am. Apparel Prods., 880 S.W.2d at 
269–70 (rejecting specific performance because the buyer unilaterally rescinded 
the contract); Gordin v. Shuler, 704 S.W.2d 403, 408 (Tex. App.—Dallas 
1985, writ ref’d n.r.e.) (rejecting specific performance because the buyer 
failed to comply with the contract terms and failed to disclose material 
information); Chessher, 619 S.W.2d at 421 (same); Hendershot, 476 
S.W.2d at 920 (erroneously interpreting Burford and Corzelius, as 
explained above).

[3] 
Strictly speaking, the pleadings filed by DiGiuseppe did not request the remedy 
of specific performance. Frisco Master Plan, the limited partnership to which 
DiGiuseppe transferred his interest under the contract, requested specific 
performance as a third-party plaintiff to the suit between DiGiuseppe and 
Lawler. Accordingly, the trial court’s judgment granted specific performance in 
favor of Frisco Master Plan, not DiGiuseppe. Because DiGiuseppe was acting on 
behalf of Frisco Master Plan and Southbrook Development Company, I have not 
distinguished between these three parties for the purposes of this opinion. 


[4] 
DiGiuseppe testified as follows:
 
Q.            
Could you close after March 7th [the date DiGiuseppe accepted the zoning 
changes]?
 
A.            
Absolutely.
 
Q.            
Could Mr. Lawler close after March 7th?
 
A.            
No.
 
Q.            
Were you ready and able to close after March 7th?
 
A.            
We were.
Q.            
Are you ready and able to close today?
 
A.            
We are.
 
 
*                                                              
                
      *                        
      *
 
Q.            
You want to close this contract in accordance with its terms, don’t 
you?
 
A.            
Yes, I do.

[5] 
Though, as the Court points out, DiGiuseppe did not have cash in hand to 
personally tender payment under the contract, DiGiuseppe testified that he had 
secured financing sources.
 
Q.            
Now, you had no ability to close this transaction yourself, did 
you?
 
A.            
I, personally, was not going to close the deal myself, no.
 
Q.            
You were going to get some investors to do it, weren’t you?
 
A.            
I had them.
 
*                                                              
                
      *                        
      *
 
Q.            
. . . Is there any question – I want you to tell the jury – is there any 
question that you have the commitments and have the money to close this 
deal?
 
A.            
Not at all – 
 
*                                                              
                
      *                        
      *
 
Q.            
And can you close this deal now?
 
A.            
Yes.