IN THE
TENTH COURT OF APPEALS


No. 10-07-00362-CV


MUSTANG AMUSEMENTS, INC. AND
MARSHA MCKIE, INDIVIDUALLY AND
AS EXECUTRIX OF THE ESTATE OF
WILLIAM J. MCKIE, DECEASED,

                                                        Appellants

 v.

THOMAS H. SINCLAIR,

                                                        Appellee


From the 13th District Court
Navarro County, Texas
Trial Court No. 05-00-14658-CV


## MEMORANDUM OPINION


        Mustang Amusements, Inc. and Marsha McKie, Individually, and as Executrix of

the Estate of William J. McKie, Deceased (collectively Mustang), appeal the decision of

the trial court awarding specific performance to Thomas H. Sinclair by ordering the

conveyance of real estate pursuant to a contract for sale of the land encompassing the

town of Mustang, Texas.  Mustang challenges the trial court's ruling due to Sinclair's

failure to tender the purchase price on the date originally scheduled for closing, the

failure of Sinclair to prove he was ready, willing, and able to complete the transaction at closing, and Sinclair's unclean hands. Mustang also appeals the trial court's equitable offsets of the amounts of rent that Sinclair had paid to Mustang during the pendency of the suit and the amount of lost rentals, the failure to find an accord and satisfaction, the failure to find the contract ambiguous, an award of damages for tortious interference with business relations, an award against Marsha McKie individually for a wrongful injunction, the denial of a judgment for rent not paid to Mustang by Sinclair, and the granting to Sinclair and the denial to Mustang of attorney's fees.

Trial was held before the court and the trial court made findings of fact and conclusions of law. In addition to the award of specific performance, the trial court allowed offsets to the purchase price of the land for rents Sinclair had paid to Mustang, for lost rental income from a trailer park on the property, for the wrongful injunction filed against Sinclair by Marsha McKie, for tortious interference with business relations, and for attorney's fees. Because we find the evidence legally insufficient to support an award for tortious interference with business relations, we reverse that portion of the judgment and render that Sinclair take nothing on that cause of action. We find the trial court did not abuse its discretion in the equitable awards and that the evidence is legally and factually sufficient in all other respects. We affirm the judgment in part and reverse and render in part.

*Background*

The undisputed facts are as follows. The town of Mustang, Texas is comprised of approximately 75 acres of land and was established by the owner of the land, Mustang

Amusements, Inc. Mustang Amusements, Inc. was operated and owned primarily by William J. (Bill) McKie until his death. Bill McKie was a well-known attorney in Navarro County. Mustang, Texas had a country and western bar, a nude cabaret, and a trailer park where the residents of Mustang lived. Sinclair originally took over the management of the country and western bar from Eric Carter, which included the use of his liquor license, in September of 2004. At that time, Carter had a lease to operate the premises from Mustang Amusements, Inc.

Sinclair and Bill McKie entered into a lease agreement for Sinclair to lease both the cabaret and the country and western bar on December 15, 2004. Bill McKie and Carter had a dispute regarding ownership of furnishings and fixtures Carter had in the country and western bar. This ultimately resulted in Carter recording two liens against the property. Sinclair continued his operation of the clubs. In the spring of 2005, Sinclair and McKie negotiated the purchase of the entire property of the town of Mustang for $600,000.

Bill McKie and his wife, Marsha McKie, prepared and signed the contract for sale of the property on behalf of Mustang, which Sinclair signed on June 1, 2005. Marsha McKie was listed as the seller's broker. Sinclair deposited the earnest money with David Wilson, McKie's attorney. The contract contained a special provision that "Buyer is aware of liens placed on the property by Eric Carter." The contract also contained a boilerplate "time is of the essence" provision and established the closing date of July 1, 2005. The contract also required the seller to furnish a title commitment to Sinclair within thirty days of the contract, at which time Sinclair could object. The seller was

further required to convey, at closing, "good and indefeasible title to the Property and show no exceptions… Seller must convey the Property at closing: … with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price… ." The seller would also be responsible to pay the cost at or before closing for releases of existing liens, other than any liens assumed by the buyer.

The property did not close on July 1, 2005. Sinclair sent a letter demanding performance on August 3, 2005. Bill McKie, through his attorney, David Wilson, filed suit against Eric Carter on August 22, 2005 to remove the liens from the property. Sinclair filed suit against Bill McKie and Mustang on October 18, 2005. On October 19, 2005, Marsha McKie became the representative of Mustang Amusements, Inc. Bill McKie died from pancreatic cancer on November 11, 2005. Marsha McKie was also named the executrix of Bill McKie's estate. We will further discuss the disputed facts in each issue as necessary to the disposition of this appeal.

### Standards of Review

Because the same standards of review apply to multiple issues, we discuss in this section the various standards of review to be applied later in this opinion.

### Abuse of Discretion

Specific performance is an equitable remedy committed to the trial court's discretion. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but

"whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Cire,* 134 S.W.3d at 839.

*Legal and Factual Sufficiency*

A legal sufficiency challenge requires consideration of "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id*.

In a challenge to the legal sufficiency of the evidence regarding an issue on which the appellant did not have the burden of proof, we "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain a no evidence challenge if: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

When the party that had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate that the evidence

establishes conclusively, i.e., as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We first search the record for evidence favorable to the adverse finding, disregarding all contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id*.

A factual sufficiency challenge to issues on which the appellant did not bear the burden of proof requires us to "consider and weigh all of the evidence." *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied). We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *See Checker Bag*, 27 S.W.3d at 633. We will reverse the "verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Id*. Reversal can occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Id*.

When a party attacks the factual sufficiency of an adverse finding on an issue on which it carried the burden of proof at trial, that party must demonstrate on appeal that the "adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

*Findings of Fact and Conclusions of Law*

When a trial court issues findings of fact and conclusions of law following a bench trial, we review the findings and conclusions under the same standards that we apply in reviewing jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Boyd v. Boyd*, 67 S.W.3d 398, 404 (Tex. App.—Fort Worth 2002, no pet.). Incorrect conclusions do not require reversal if the controlling findings of fact will support a correct legal theory. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex. App.—Waco 1997, pet. denied).

Moreover, in a bench trial, the trial court is the sole determiner of the credibility of the witnesses and the weight to be given their testimony. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet denied). The trial court, as the finder of fact, may consider all of the evidence and circumstances and can reject or accept all or part of a witness's testimony. *Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 638 (Tex. App.—Tyler 2004, no pet.). The trial court as the trier of fact also resolves any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

*Dead Man's Rule*

Texas Rule of Evidence 601(b), more commonly known as the "Dead Man's Rule" (and formerly known as the "Dead Man's Statute"), relates to the admission of

evidence about interactions with deceased persons in certain circumstances. TEX. R. EVID. 601(b). Mustang objected and was given a running objection during the trial to any discussions with or statements made by Bill McKie. In this appeal, however, Mustang makes several conclusory statements regarding the Dead Man's Rule in its brief on the merits to this Court, but cites no authority in support of its position. Any complaint regarding the admissibility of this testimony is therefore waived. *See* TEX. R. APP. P. 38.1(i).

*Specific Performance*

Mustang complains in two points of error that the trial court abused its discretion in its award of specific performance to Sinclair in that Sinclair failed to tender performance on the contract and that there was no competent proof that Sinclair was "ready, willing, and able" to perform at the time of closing.

The equitable remedy of specific performance may be awarded upon a showing of a breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). However, a party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the opposing party's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94, 601 (Tex. 2008); *see also 17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 258 (Tex. App.—Dallas 2002, pet. denied). It is required that both elements be proved prior to an award of specific performance unless the requirement of tender is excused. *DiGiuseppe*, 269 S.W.3d at 599.

"Generally speaking, it is a prerequisite to the equitable remedy of specific performance that the buyer of land shall have made an actual tender of the purchase price . . . [unless] actual tender would have been a useless act . . . ." *DiGiuseppe*, 269 S.W.3d at 594 (citing *Wilson v. Klein*, 715 S.W.2d 814, 822 (Tex. App.—Austin 1986, writ ref'd n.r.e.). *See also McMillan v. Smith*, 363 S.W.2d 437, 442-43 (Tex. 1962).

The exception to the general rule that actual tender of performance is a prerequisite to obtaining specific performance is grounded in the notion that actual pre-suit tender of performance should be excused when it would be a "useless act, an idle ceremony, or wholly nugatory." *DiGiuseppe*, 269 S.W.3d at 594; *Wilson*, 715 S. W.2d at 822.

The issue of whether a party to a contract is "ready, willing, and able" to perform presents a question of fact, not a question of law. *See DiGiuseppe*, 269 S.W.3d at 596. *See also Holt v. Elliott Indus., Inc.*, 711 S.W.2d 435, 437 (Tex. App.—Fort Worth 1986, no writ). Additionally, whether a plaintiff would have performed his contractual obligations when they came due but for the defendant's breach or repudiation of the contract is also a question of fact. *DiGiuseppe*, 269 S.W.3d at 600.

In this case, the trial court found that the closing was unable to take place due to Mustang's inability to resolve the Carter liens prior to the scheduled closing date and that Sinclair had agreed to the rescheduling of the closing date. David Wilson, Bill McKie's attorney for this transaction, agreed that the liens were the obligation of McKie, that they were actively working on resolving them, and that he did not expect Sinclair to tender any money on July 1, 2005, because the closing could not take place. Sinclair

testified that Bill McKie had asked him to reschedule the closing because of the Carter liens prior to July 1, 2005. We cannot say that the trial court abused its discretion in determining that actual tender would have been "a useless act" and therefore, was excused.

The trial court also found that Sinclair was "ready and able" to close at the times surrounding the closing date. Sinclair testified that he had lined up investors to aid with the purchase of the property. Two investors testified that they had agreed and were ready to pay the entire amount that was necessary to close. Because the issue of Sinclair being "ready, willing, and able" to close is a question of fact, the trial court acted within its discretion to believe the testimony that the investors were prepared to pay the money on July 1, 2005 and that Sinclair was indeed "ready, willing, and able" to perform as required on that date. *See DiGiuseppe*, 269 S.W.3d at 600. *See also Corzelius v. Oliver*, 220 S.W.2d 632, 635-636 (Tex. 1949) (Buyer not obliged to produce binding commitments for financing to raise an issue of fact, other competent evidence in the record included testimony from a bank officer and brother on their willingness to lend money supported a finding that Corzelius was in a position to perform). Bill McKie filed a lawsuit against Carter in August of 2005 to have the liens judicially removed, and in his pleadings affirmatively stated that Sinclair had funding for the sale, which he was about to lose due to the failure to close. We also cannot say that the trial court abused its discretion in finding that Sinclair was ready, willing, and able to perform at the original closing date.

*Time is of the Essence*

The standard for the tender of performance is, however, different when a contract has a provision that "time is of the essence." An actual tender in strict compliance with the provisions of the contract, within the time allowed by the contract, is always required when a contract provides that time is of the essence unless it is shown that the defaulting party (1) prevented actual tender by the party attempting to perform, or (2) when the defendant has repudiated the contract before the time for performance. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 572 (Tex. App.—Fort Worth 2008, pet. denied); *Krayem v. USRP (PAC), L.P.*, 194 S.W.3d 91, 94 (Tex. App.—Dallas 2006, pet. denied); *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79-81 (Tex. App.—Austin 2003, pet. denied). To overcome the effect of the clause, upon either showing for enforcement of the clause, a party seeking specific performance must only plead and prove that it is ready, willing, and able to perform its part of the contract according to its terms. *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.); *17090 Parkway*, 80 S.W.3d at 258.

However, a "time is of the essence" provision may be waived. *17090 Parkway*, 80 S.W.3d at 255; *Puckett v. Hoover*, 146 Tex. 1, 6, 202 S.W.2d 209, 212 (1947); *Stevenson v. Adams*, 640 S.W.2d 681, 684 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Waiver may be shown by course of dealing between the parties. *17090 Parkway*, 80 S.W.3d at 255; *Stevenson*, 640 S.W.2d at 684; *Seismic & Digital Concepts, Inc. v. Digital Res. Corp.*, 590 S.W.2d 718, 721 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ).

We find that the time is of the essence clause has been waived in this case. The evidence that the closing was extended per Bill McKie's request because of the Carter liens which were Mustang's responsibility to resolve is corroborated by a letter sent by Wilson to Sinclair on July 13, 2005 which indicates an intent by Bill McKie to continue his efforts to clear the liens and that he would inform Sinclair when the liens were cleared. This is further evidenced by Bill McKie filing a lawsuit against Carter to clear the liens in August of 2005.

Because we find that the trial court did not abuse its discretion in awarding specific performance, we overrule Mustang's issues II and III.[1]

### Unclean Hands

Mustang complains that the trial court erred in its award of specific performance because Sinclair has unclean hands in the transaction.

One who seeks equity must do equity and must come to court with clean hands. *See Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied); *Flores v. Flores*, 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no pet.). Whether equitable relief should be denied based on unclean hands is left to the discretion of the trial court. *Dunnagan*, 204 S.W.3d at 41; *Flores*, 116 S.W.3d at 876.

Mustang argues that Sinclair has unclean hands because he purportedly owned the Carter liens through prior dealings with Carter and that he also solicited perjured testimony regarding whether he was ready, willing, and able to perform under the

---

[1] In its brief on the merits, what Mustang has labeled as Issue I sets forth the relevant standards of review for purposes of its subsequent issues, but does not set forth an issue for us to address. In order to avoid confusion for the parties, we have used the precise numbering used by Mustang in its brief in identifying each issue in this opinion.

contract. The clean hands doctrine should not be applied unless the party asserting the doctrine has been seriously harmed and the wrong complained of cannot be corrected without the application of the doctrine. *Dunnagan*, 204 S.W.3d at 41. Even if we agreed that Sinclair had unclean hands, Mustang has made no claim or argument to this Court regarding any serious harm due to the misconduct, if any, of Sinclair. Therefore, Mustang's claim of unclean hands must fail. We overrule issue number IV.

*Ambiguous Contract*

Mustang complains that the trial court erred in determining that the real estate contract was not ambiguous as to whether Mustang or Sinclair had the obligation to cure the Carter liens prior to closing. Their argument is based on the provision added to the contract that states: "Buyer is aware of liens placed on the property by Eric Carter." Mustang contends that this provision renders the contract unclear as to whether "Sinclair was assuming the liens, relieving Mustang Amusements of any duty to cure the liens, or was aware of the liens and nonetheless wished to proceed to closing." Appellant's Brief at page 39.

In construing contracts, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the true intentions of the parties, we examine the entire contract in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not

ambiguous, and the court construes it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). No single contract provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The language in a contract should be given its plain grammatical meaning, unless to do so would defeat the parties' intent. *DeWitt County Elec. Coop. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). This determination is made in light of the circumstances present when the parties entered into the contract. *Ganske v. Spence*, 129 S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.) (citing *Grimes v. Andrews*, 997 S.W.2d 877, 881 (Tex. App.—Waco 1999, no pet.).

An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). For an ambiguity to exist, both interpretations must be reasonable. *Id*.

We believe that the provision that "Buyer is aware of the Carter liens" means exactly what it says, that Sinclair knew of the existence of the liens. Anything beyond that, such as suggesting this meant Sinclair was responsible for clearing the liens or would purchase the property subject to the liens, is not a reasonable interpretation of the agreement, particularly in light of the express provisions to the contrary in the contract. We overrule Mustang's issue number V.

*Accord and Satisfaction*

Mustang and Sinclair entered into written settlement negotiations in December of 2005. Mustang, through its attorney David Wilson, sent Sinclair a letter offering a settlement. Sinclair rejected that offer and responded with an offer of his own. Mustang responded with yet another offer in a letter dated December 20, 2005 that reduced the selling price to $570,000, required Sinclair to pay the rent on the leases for the month of December no later than 5:00 p.m. on December 21, 2005, and made Sinclair responsible for all liens on the property. On December 27, 2005, Sinclair signed and returned that offer with a letter that demanded an additional month for closing, limited the assumption of liens to only the Carter liens, and included a provision that his leases would remain in effect in the event the Carter liens could not be removed. The signed offer and letter with the additional terms were faxed together to Wilson.

According to Wilson, in a telephone conversation on December 30, 2005, Wilson informed Sinclair that the offer of December 20 would be accepted if Sinclair tendered the rent payment no later than 1:00 p.m. on December 31, 2005. Sinclair appeared at the office of Wilson during the lunch hour of December 31, 2005 and left two checks with Wilson's receptionist.

According to Sinclair, Wilson had told him to come to his office so they could discuss the matter, including his counteroffer of December 27, in the phone conversation of December 30. However, Wilson was unavailable when Sinclair left the checks at his office. Sinclair testified that he ran into Carter outside Wilson's office, became uncomfortable with having left the checks without speaking to Wilson first, and

went back in where he asked for the checks back so he could return with cashier's checks. Mustang contends that the checks left at Wilson's office taken with the signed letter from December 20, constitute a new agreement which should operate as an accord and satisfaction of the July 1, 2005 contract, and that the trial court erred in finding that there was no accord and satisfaction.

The affirmative defense of accord and satisfaction is a type of contractual modification that rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of a lesser payment tendered and accepted. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969). A modification of a contract must satisfy the elements of a contract: a meeting of the minds supported by consideration. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). Whether a contract is modified depends on the parties' intentions and is a question of fact. *Id.* at 228-29. The burden of proving modification rests on the party asserting the modification. *Id.* at 229. Because a valid accord and satisfaction depends upon an agreement, it "only occurs when the parties mutually assent to it," and their intention is a controlling element. *McCarty v. Humphrey*, 261 S.W. 1015, 1016 (Tex. Comm'n App. 1924, judgm't adopted).

The trial court found that there was no mutual assent or "meeting of the minds" necessary for an accord and satisfaction. We defer to the trial court's findings of fact that there was not sufficient intent that a new agreement was formed. We find that the trial court did not err in its finding of no accord and satisfaction as a matter of law and

that this finding is not against the great weight of the evidence. We overrule Mustang's issue number VI.

*Equitable Damages*

Mustang complains that the trial court erred in granting Sinclair an offset for rent Sinclair paid to Mustang pursuant to the leases after the date for the original closing as well as an offset for lost rentals on the trailer park based on the error in the award of specific performance. Mustang also complains of the equitable offset for the wrongful injunction and the award of attorney's fees. Mustang offers no authorities in support of its position. Because we believe that the trial court did not err in awarding specific performance, we overrule this issue. *See Byram v. Scott*, No. 03-07-00471-CV, 2009 LEXIS 5105 at *13 (Tex. App.—Austin July 1, 2009, no pet h.). However, even if there was error, this complaint is inadequately briefed, and therefore, waived. *See* TEX. R. APP. P. 38.1(i). We overrule Mustang's issue number VII.

*Tortious Interference with Business Relations*

The elements of tortious interference with prospective business relations are: (1) a reasonable probability that the plaintiff would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did the act with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the interference. *See Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App.—Waco 2001, pet. denied). *See*

*also Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex. App.—Eastland 2002, pet. denied).

"Lost profits are damages for the loss of net income to a business measured by reasonable certainty." *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). *See also Bossier Chrysler Dodge II, Inc. v. Rauschenberg*, 201 S.W.3d 787, 808 (Tex. App.—Waco 2006) *rev'd in part*, 238 S.W.3d 376 (Tex. 2007) (per curiam). "Net profits" is defined as "what remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business." *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex. App.—Dallas 1988, writ denied) (*citing R. A. Corbett Transp., Inc. v. Oden*, 678 S.W.2d 172, 176 (Tex. App.—Tyler 1984, no writ).

"Exact calculations" are not required to recover for lost profits. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). "At a minimum [however], opinions or lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained." *Id*.

A report filed with the Texas Alcohol and Beverage Commission was admitted showing gross sales of alcohol for one month for the country and western bar. Sinclair further testified that the average amount of gross sales of alcohol for the country and western bar was $8,000-$9,000 per month, which totaled $128,000 from the time the club closed until the time of trial. Sinclair admitted that this number was a gross number and did not include his expenses to operate the club. No evidence was offered as to what the operating expenses of the country and western club were on a monthly basis. Thus, Sinclair failed to provide sufficient "facts, figures, or data" from which the

factfinder could ascertain lost net profits.  *See Texaco, Inc. v. Phan*, 137 S.W.3d 763, 771-773 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  Without such proof, the evidence is legally insufficient to support the trial court's award of $50,000 for tortious interference with business relations.  *See Bossier Chrysler Dodge II*, 201 S.W.3d at 808.  We sustain Mustang's issue number VIII.

*Breach of Lease Agreement*

Mustang complains that the trial court erred by denying its counterclaim as a matter of law against Sinclair for failing to pay rent from July 1, 2005 until January of 2006 pursuant to the terms of the lease agreements and for denying an award of attorney's fees for the breach of the lease agreement.  Mustang contends that any oral modification of the lease agreement violates the Statute of Frauds, and is, therefore, invalid.  *See* TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2002).  In its findings of fact, the trial court found that Bill McKie had orally agreed with Sinclair that Sinclair would not be responsible for paying rent pursuant to the leases until the matter of the Carter liens was cleared up, and that this oral agreement had been corroborated by his inaction in pursuing collection of the rents after July 1, 2005.  Prior to this time, Bill McKie had personally come to the club on many occasions to collect the rent from Sinclair during the pendency of the leases.  After July 1, 2005, however, the trial court found in its findings of fact that Bill McKie made no efforts to collect the rent as he had prior to the original date set for closing.

However, even if Mustang were able to prevail on a breach of the lease agreement, we affirm the trial court's conclusion based on its findings of fact regarding

the alleged breach of the contract for the sale of the land and the equitable offset granted by the trial court restoring the rents actually paid by Sinclair back to him. *See Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory.). The trial court has the discretion to place the parties in an economic position equivalent to their having performed the contract according to its terms by balancing the equities. *See Byram v. Scott*, No. 03-07-00471-CV, 2009 LEXIS 5105 at *13 (Tex. App.—Austin July 1, 2009, no pet h.). As such, we do not need to reach whether the oral modification of the lease violated the Statute of Frauds.

### *Attorney's Fees*

Mustang also complains of the trial court's failure to award attorney's fees for the breach of the lease agreement. Although a prevailing party to a contract suit is entitled to attorneys' fees, the prevailing party is typically the party who either successfully prosecutes the action or successfully defends against it, prevailing on the main issue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2007). *See also Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.). In other words, the prevailing party is the one vindicated by the judgment. *Id*. We find that Mustang is not the prevailing party on the main issue in this case, that being the award of specific performance, and therefore is not entitled to an award of attorney's fees. We overrule Mustang's issue number IX.

*Conclusion*

We find the evidence was legally insufficient to support the award of $50,000 for tortious interference with business relations. Therefore, we reverse and render that Sinclair take nothing on that portion of the judgment. We affirm the judgment of the trial court in all other respects.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed in part/Reversed and rendered in part
Opinion delivered and filed October 28, 2009
[CV06]