IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00362-CV

 

Mustang Amusements, Inc. and 

Marsha McKie, Individually and 

as Executrix of the Estate of 

William J. McKie, Deceased,

                                                                                    Appellants

 v.

 

Thomas H. Sinclair,

                                                                                    Appellee

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 05-00-14658-CV

 



MEMORANDUM  Opinion










 

            Mustang Amusements, Inc. and Marsha
McKie, Individually, and as Executrix of the Estate of William J. McKie,
Deceased (collectively Mustang), appeal the decision of the trial court
awarding specific performance to Thomas H. Sinclair by ordering the conveyance
of real estate pursuant to a contract for sale of the land encompassing the
town of Mustang, Texas.  Mustang challenges the trial court’s ruling due to
Sinclair’s failure to tender the purchase price on the date originally
scheduled for closing, the failure of Sinclair to prove he was ready, willing,
and able to complete the transaction at closing, and Sinclair’s unclean hands. 
Mustang also appeals the trial court’s equitable offsets of the amounts of rent
that Sinclair had paid to Mustang during the pendency of the suit and the
amount of lost rentals, the failure to find an accord and satisfaction, the
failure to find the contract ambiguous, an award of damages for tortious interference
with business relations, an award against Marsha McKie individually for a
wrongful injunction, the denial of a judgment for rent not paid to Mustang by
Sinclair, and the granting to Sinclair and the denial to Mustang of attorney’s
fees.

            Trial was held before the court and
the trial court made findings of fact and conclusions of law.  In addition to
the award of specific performance, the trial court allowed offsets to the
purchase price of the land for rents Sinclair had paid to Mustang, for lost rental
income from a trailer park on the property, for the wrongful injunction filed
against Sinclair by Marsha McKie, for tortious interference with business
relations, and for attorney’s fees.  Because we find the evidence legally
insufficient to support an award for tortious interference with business
relations, we reverse that portion of the judgment and render that Sinclair
take nothing on that cause of action.  We find the trial court did not abuse
its discretion in the equitable awards and that the evidence is legally and
factually sufficient in all other respects.  We affirm the judgment in part and
reverse and render in part.

Background

            The undisputed facts are as follows. 
The town of Mustang, Texas is comprised of approximately 75 acres of land and
was established by the owner of the land, Mustang Amusements, Inc.  Mustang
Amusements, Inc. was operated and owned primarily by William J. (Bill) McKie
until his death.  Bill McKie was a well-known attorney in Navarro County.  Mustang, Texas had a country and western bar, a nude cabaret, and a trailer park where
the residents of Mustang lived.  Sinclair originally took over the management
of the country and western bar from Eric Carter, which included the use of his
liquor license, in September of 2004.  At that time, Carter had a lease to
operate the premises from Mustang Amusements, Inc.  

            Sinclair and Bill McKie entered into a
lease agreement for Sinclair to lease both the cabaret and the country and
western bar on December 15, 2004.  Bill McKie and Carter had a dispute
regarding ownership of furnishings and fixtures Carter had in the country and
western bar.  This ultimately resulted in Carter recording two liens against
the property.  Sinclair continued his operation of the clubs.  In the spring of
2005, Sinclair and McKie negotiated the purchase of the entire property of the
town of Mustang for $600,000.

            Bill McKie and his wife, Marsha McKie,
prepared and signed the contract for sale of the property on behalf of Mustang,
which Sinclair signed on June 1, 2005.  Marsha McKie was listed as the seller’s
broker.  Sinclair deposited the earnest money with David Wilson, McKie’s
attorney.  The contract contained a special provision that “Buyer is aware of
liens placed on the property by Eric Carter.”  The contract also contained a
boilerplate “time is of the essence” provision and established the closing date
of July 1, 2005.  The contract also required the seller to furnish a title
commitment to Sinclair within thirty days of the contract, at which time Sinclair
could object.  The seller was further required to convey, at closing, “good and
indefeasible title to the Property and show no exceptions…  Seller must convey
the Property at closing: … with no liens, assessments, or Uniform Commercial
Code or other security interests against the Property which will not be
satisfied out of the sales price… .”  The seller would also be responsible to
pay the cost at or before closing for releases of existing liens, other than
any liens assumed by the buyer.

            The property did not close on July 1,
2005.  Sinclair sent a letter demanding performance on August 3, 2005.  Bill
McKie, through his attorney, David Wilson, filed suit against Eric Carter on
August 22, 2005 to remove the liens from the property.  Sinclair filed suit
against Bill McKie and Mustang on October 18, 2005.  On October 19, 2005,
Marsha McKie became the representative of Mustang Amusements, Inc.  Bill McKie
died from pancreatic cancer on November 11, 2005.  Marsha McKie was also named
the executrix of Bill McKie’s estate.  We will further discuss the disputed
facts in each issue as necessary to the disposition of this appeal.

Standards of Review

            Because the same standards of review
apply to multiple issues, we discuss in this section the various standards of
review to be applied later in this opinion.

Abuse of Discretion

Specific performance is an equitable remedy
committed to the trial court's discretion.  Stafford v. S. Vanity Magazine,
Inc., 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied).  The test
for an abuse of discretion is not whether, in the opinion of the reviewing
court, the facts present an appropriate case for the trial court's action, but
"whether the court acted without reference to any guiding rules and
principles."  Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004) (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)).  The trial court's ruling should be reversed only if it was arbitrary or
unreasonable.  Cire, 134 S.W.3d at 839.

Legal and Factual Sufficiency

A legal sufficiency
challenge requires consideration of "whether the evidence at trial would
enable reasonable and fair-minded people to reach the verdict under
review."  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We "must credit favorable evidence if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not."  Id.

In a challenge to the legal sufficiency of the
evidence regarding an issue on which the appellant did not have the burden of
proof, we "view the evidence in the light favorable to the verdict,
crediting favorable evidence if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not."  City of Keller
v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005).  We will sustain a no evidence
challenge if: (a) there is a complete absence of evidence of a vital fact, (b)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (c) the evidence offered to prove
a vital fact is no more than a mere scintilla, or (d) the evidence conclusively
establishes the opposite of the vital fact.  Merrell Dow Pharms. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).

When the party that had the burden of proof at
trial complains on appeal of the legal insufficiency of an adverse finding,
that party must demonstrate that the evidence establishes conclusively, i.e.,
as a matter of law, all vital facts in support of the finding sought.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  We first search the
record for evidence favorable to the adverse finding, disregarding all contrary
evidence unless a reasonable factfinder could not.  City of Keller v. Wilson, 168 S.W.3d 802, 822, 827 (Tex. 2005).  If we find no evidence supporting the
finding, we then determine whether the contrary was established as a matter of
law.  Id.

A factual sufficiency challenge to issues on which
the appellant did not bear the burden of proof requires us to "consider
and weigh all of the evidence."  Checker Bag Co. v. Washington, 27
S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied).  We may not pass upon the
witnesses' credibility or substitute our judgment for that of the factfinder,
even if the evidence would clearly support a different result.  See Checker
Bag, 27 S.W.3d at 633.  We will reverse the "verdict only if it is so
contrary to the overwhelming weight of the evidence that the verdict is clearly
wrong and unjust."  Id.  Reversal can occur because the finding was
based on weak or insufficient evidence or because the proponent's proof,
although adequate if taken alone, is overwhelmed by the opponent's contrary
proof.  Id.

When a party attacks the factual sufficiency of an
adverse finding on an issue on which it carried the burden of proof at trial,
that party must demonstrate on appeal that the “adverse finding is against the
great weight and preponderance of the evidence." Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) (citing Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

 

Findings of Fact and Conclusions of Law

            When a trial court issues findings of
fact and conclusions of law following a bench trial, we review the findings and
conclusions under the same standards that we apply in reviewing jury findings.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  We review the
trial court's conclusions of law de novo.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  

            Conclusions of law will be upheld on
appeal if the judgment can be sustained on any legal theory supported by the
evidence.  Boyd v. Boyd, 67 S.W.3d 398, 404 (Tex. App.—Fort Worth 2002,
no pet.).  Incorrect conclusions do not require reversal if the controlling
findings of fact will support a correct legal theory.  Hitzelberger v.
Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex. App.—Waco 1997, pet. denied).  

Moreover, in a bench trial, the trial court is the
sole determiner of the credibility of the witnesses and the weight to be given
their testimony.  See Canal Ins. Co. v. Hopkins, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet denied).  The trial court, as the finder of fact, may consider
all of the evidence and circumstances and can reject or accept all or part of a
witness's testimony.  Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.,
156 S.W.3d 630, 638 (Tex. App.—Tyler 2004, no pet.).  The trial court as the
trier of fact also resolves any inconsistencies in a witness's testimony.  McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). 

Dead Man’s Rule

            Texas Rule of Evidence 601(b), more
commonly known as the “Dead Man’s Rule” (and formerly known as the “Dead Man’s
Statute”), relates to the admission of evidence about interactions with
deceased persons in certain circumstances.  Tex.
R. Evid. 601(b).  Mustang objected and was given a running objection
during the trial to any discussions with or statements made by Bill McKie.  In
this appeal, however, Mustang makes several conclusory statements regarding the
Dead Man’s Rule in its brief on the merits to this Court, but cites no
authority in support of its position.  Any complaint regarding the
admissibility of this testimony is therefore waived.  See Tex. R. App. P. 38.1(i).

Specific Performance

Mustang complains in two points of error that the
trial court abused its discretion in its award of specific performance to
Sinclair in that Sinclair failed to tender performance on the contract and that
there was no competent proof that Sinclair was “ready, willing, and able” to
perform at the time of closing.

The equitable remedy of specific performance may
be awarded upon a showing of a breach of contract.  Stafford v. S. Vanity
Magazine, Inc., 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). 
However, a party seeking specific performance must plead and prove (1) compliance
with the contract including tender of performance unless excused by the
opposing party's breach or repudiation and (2) the readiness, willingness, and
ability to perform at relevant times.  DiGiuseppe v. Lawler, 269 S.W.3d
588, 593-94, 601 (Tex. 2008); see also 17090 Parkway, Ltd. v. McDavid,
80 S.W.3d 252, 258 (Tex. App.—Dallas 2002, pet. denied).  It is required that
both elements be proved prior to an award of specific performance unless the
requirement of tender is excused.  DiGiuseppe, 269 S.W.3d at 599.

"Generally speaking, it is a prerequisite to
the equitable remedy of specific performance that the buyer of land shall have
made an actual tender of the purchase price . . . [unless] actual tender would
have been a useless act . . . ." DiGiuseppe, 269 S.W.3d at 594
(citing Wilson v. Klein, 715 S.W.2d 814, 822 (Tex. App.—Austin 1986,
writ ref'd n.r.e.). See also McMillan v. Smith, 363 S.W.2d 437, 442-43 (Tex. 1962).

The exception to the
general rule that actual tender of performance is a prerequisite to obtaining
specific performance is grounded in the notion that actual pre-suit tender
of performance should be excused when it would be a "useless act, an idle
ceremony, or wholly nugatory."  DiGiuseppe, 269 S.W.3d at 594; Wilson,
715 S. W.2d at 822. 

The issue of whether a party to a contract is
"ready, willing, and able" to perform presents a question of fact,
not a question of law.  See DiGiuseppe, 269 S.W.3d at 596.  See also
Holt v. Elliott Indus., Inc., 711 S.W.2d 435, 437 (Tex. App.—Fort Worth
1986, no writ).  Additionally, whether a plaintiff would have performed his
contractual obligations when they came due but for the defendant’s breach or
repudiation of the contract is also a question of fact.  DiGiuseppe, 269
S.W.3d at 600.

In this case, the trial court found that the
closing was unable to take place due to Mustang’s inability to resolve the
Carter liens prior to the scheduled closing date and that Sinclair had agreed
to the rescheduling of the closing date.  David Wilson, Bill McKie’s attorney
for this transaction, agreed that the liens were the obligation of McKie, that
they were actively working on resolving them, and that he did not expect
Sinclair to tender any money on July 1, 2005, because the closing could not
take place.  Sinclair testified that Bill McKie had asked him to reschedule the
closing because of the Carter liens prior to July 1, 2005.  We cannot say that
the trial court abused its discretion in determining that actual tender would
have been “a useless act” and therefore, was excused.

The trial court also found that Sinclair was
“ready and able” to close at the times surrounding the closing date.  Sinclair
testified that he had lined up investors to aid with the purchase of the
property.  Two investors testified that they had agreed and were ready to pay
the entire amount that was necessary to close.  Because the issue of Sinclair
being “ready, willing, and able” to close is a question of fact, the trial
court acted within its discretion to believe the testimony that the investors
were prepared to pay the money on July 1, 2005 and that Sinclair was indeed
“ready, willing, and able” to perform as required on that date.  See
DiGiuseppe, 269 S.W.3d at 600.  See also Corzelius v. Oliver,
220 S.W.2d 632, 635-636 (Tex. 1949) (Buyer not obliged to produce binding
commitments for financing to raise an issue of fact, other competent evidence
in the record included testimony from a bank officer and brother on their
willingness to lend money supported a finding that Corzelius was in a position
to perform).  Bill McKie filed a lawsuit against Carter in August of 2005 to
have the liens judicially removed, and in his pleadings affirmatively stated
that Sinclair had funding for the sale, which he was about to lose due to the
failure to close.  We also cannot say that the trial court abused its
discretion in finding that Sinclair was ready, willing, and able to perform at
the original closing date.

 

Time is of the Essence

            The standard for the tender of
performance is, however, different when a contract has a provision that “time
is of the essence.”  An actual tender in strict compliance with the provisions
of the contract, within the time allowed by the contract, is always required
when a contract provides that time is of the essence unless it is shown that
the defaulting party (1) prevented actual tender by the party attempting to
perform, or (2) when the defendant has repudiated the contract before the time
for performance.  Paciwest, Inc. v. Warner Alan Props., LLC, 266 S.W.3d
559, 572 (Tex. App.—Fort Worth 2008, pet. denied); Krayem v. USRP (PAC), L.P.,
194 S.W.3d 91, 94 (Tex. App.—Dallas 2006, pet. denied); Roundville Partners,
L.L.C. v. Jones, 118 S.W.3d 73, 79-81 (Tex. App.—Austin 2003, pet.
denied).  To overcome the effect of the clause, upon either showing for
enforcement of the clause, a party seeking specific performance must only plead
and prove that it is ready, willing, and able to perform its part of the
contract according to its terms.  Rus-Ann Dev., Inc. v. ECGC, Inc., 222
S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.); 17090 Parkway, 80
S.W.3d at 258.

            However, a "time is of the
essence" provision may be waived.  17090 Parkway, 80 S.W.3d at 255;
Puckett v. Hoover, 146 Tex. 1, 6, 202 S.W.2d 209, 212 (1947); Stevenson
v. Adams, 640 S.W.2d 681, 684 (Tex. App.—Houston [14th Dist.] 1982, writ
ref'd n.r.e.).  Waiver may be shown by course of dealing between the parties.  17090
Parkway, 80 S.W.3d at 255; Stevenson, 640 S.W.2d at 684; Seismic
& Digital Concepts, Inc. v. Digital Res. Corp., 590 S.W.2d 718, 721
(Tex. Civ. App.—Houston [1st Dist.] 1979, no writ).

            We find that the time is of the
essence clause has been waived in this case.  The evidence that the closing was
extended per Bill McKie’s request because of the Carter liens which were Mustang’s
responsibility to resolve is corroborated by a letter sent by Wilson to
Sinclair on July 13, 2005 which indicates an intent by Bill McKie to continue
his efforts to clear the liens and that he would inform Sinclair when the liens
were cleared.  This is further evidenced by Bill McKie filing a lawsuit against
Carter to clear the liens in August of 2005.

            Because we find that the trial court
did not abuse its discretion in awarding specific performance, we overrule
Mustang’s issues II and III.[1]

Unclean Hands

            Mustang complains that the trial court
erred in its award of specific performance because Sinclair has unclean hands
in the transaction.

            One who seeks equity must do equity
and must come to court with clean hands.  See Dunnagan v. Watson, 204 S.W.3d
30, 41 (Tex. App.—Fort Worth 2006, pet. denied); Flores v. Flores, 116
S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no pet.).  Whether equitable
relief should be denied based on unclean hands is left to the discretion of the
trial court.  Dunnagan, 204 S.W.3d at 41; Flores, 116 S.W.3d at
876.

Mustang argues that Sinclair has unclean hands
because he purportedly owned the Carter liens through prior dealings with
Carter and that he also solicited perjured testimony regarding whether he was
ready, willing, and able to perform under the contract.  The clean hands
doctrine should not be applied unless the party asserting the doctrine has been
seriously harmed and the wrong complained of cannot be corrected without the
application of the doctrine.  Dunnagan, 204 S.W.3d at 41.  Even if we
agreed that Sinclair had unclean hands, Mustang has made no claim or argument
to this Court regarding any serious harm due to the misconduct, if any, of
Sinclair.  Therefore, Mustang’s claim of unclean hands must fail.  We overrule
issue number IV.

Ambiguous Contract

            Mustang complains that the trial court erred in determining that the
real estate contract was not ambiguous as to whether Mustang or Sinclair had
the obligation to cure the Carter liens prior to closing.  Their argument is
based on the provision added to the contract that states: “Buyer is aware of
liens placed on the property by Eric Carter.”  Mustang contends that this
provision renders the contract unclear as to whether “Sinclair was assuming the
liens, relieving Mustang Amusements of any duty to cure the liens, or was aware
of the liens and nonetheless wished to proceed to closing.”  Appellant’s Brief
at page 39.

            In construing contracts, our primary
concern is to ascertain and give effect to the intentions of the parties as
expressed in the contract.  Kelley-Coppedge, Inc. v. Highlands Ins. Co.,
980 S.W.2d 462, 464 (Tex. 1998).  To ascertain the true intentions of the
parties, we examine the entire contract in an effort to harmonize and give
effect to all of its provisions so that none will be rendered meaningless.  MCI
Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).  When a written contract is so worded that it can be given a certain or
definite legal meaning or interpretation, it is not ambiguous, and the court
construes it as a matter of law.  American Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003).  No single contract provision taken alone will
be given controlling effect; rather, all the provisions must be considered with
reference to the whole instrument.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  The language in a contract should be given its plain grammatical
meaning, unless to do so would defeat the parties' intent.  DeWitt County Elec. Coop. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).  

A contract is ambiguous when its meaning is
uncertain and doubtful or is reasonably susceptible to more than one
interpretation.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121
(Tex. 1996).  This determination is made in light of the circumstances present
when the parties entered into the contract.  Ganske v. Spence, 129
S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.) (citing Grimes v. Andrews,
997 S.W.2d 877, 881 (Tex. App.—Waco 1999, no pet.).  

An ambiguity does not arise simply because the
parties advance conflicting interpretations of the contract.  Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  For an ambiguity to exist, both interpretations must be reasonable.  Id.

We believe that the provision that “Buyer is aware
of the Carter liens” means exactly what it says, that Sinclair knew of the
existence of the liens.  Anything beyond that, such as suggesting this meant
Sinclair was responsible for clearing the liens or would purchase the property
subject to the liens, is not a reasonable interpretation of the agreement,
particularly in light of the express provisions to the contrary in the
contract.  We overrule Mustang’s issue number V.

Accord and Satisfaction

            Mustang and Sinclair entered into
written settlement negotiations in December of 2005.  Mustang, through its
attorney David Wilson, sent Sinclair a letter offering a settlement.  Sinclair
rejected that offer and responded with an offer of his own.  Mustang responded with
yet another offer in a letter dated December 20, 2005 that reduced the selling
price to $570,000, required Sinclair to pay the rent on the leases for the
month of December no later than 5:00 p.m. on December 21, 2005, and made
Sinclair responsible for all liens on the property.  On December 27, 2005,
Sinclair signed and returned that offer with a letter that demanded an
additional month for closing, limited the assumption of liens to only the
Carter liens, and included a provision that his leases would remain in effect
in the event the Carter liens could not be removed.  The signed offer and
letter with the additional terms were faxed together to Wilson.  

According to Wilson, in a telephone conversation
on December 30, 2005, Wilson informed Sinclair that the offer of December 20
would be accepted if Sinclair tendered the rent payment no later than 1:00 p.m.
on December 31, 2005.  Sinclair appeared at the office of Wilson during the
lunch hour of December 31, 2005 and left two checks with Wilson’s receptionist.

            According to Sinclair, Wilson had told him to come to his office so they could discuss the matter, including his
counteroffer of December 27, in the phone conversation of December 30. 
However, Wilson was unavailable when Sinclair left the checks at his office. 
Sinclair testified that he ran into Carter outside Wilson’s office, became
uncomfortable with having left the checks without speaking to Wilson first, and
went back in where he asked for the checks back so he could return with
cashier’s checks.  Mustang contends that the checks left at Wilson’s office
taken with the signed letter from December 20, constitute a new agreement which
should operate as an accord and satisfaction of the July 1, 2005 contract, and
that the trial court erred in finding that there was no accord and
satisfaction.  

The affirmative defense of accord and satisfaction
is a type of contractual modification that rests upon a new contract, express
or implied, in which the parties agree to the discharge of the existing
obligation by means of a lesser payment tendered and accepted.  Jenkins v.
Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969).  A modification of a
contract must satisfy the elements of a contract: a meeting of the minds
supported by consideration.  Hathaway v. Gen. Mills, Inc., 711 S.W.2d
227, 228 (Tex. 1986).  Whether a contract is modified depends on the parties'
intentions and is a question of fact.  Id. at 228-29.  The burden of
proving modification rests on the party asserting the modification.  Id. at 229.  Because a valid accord and satisfaction depends upon an agreement, it
"only occurs when the parties mutually assent to it," and their
intention is a controlling element.  McCarty v. Humphrey, 261 S.W. 1015,
1016 (Tex. Comm'n App. 1924, judgm't adopted).

The trial court found that there was no mutual
assent or “meeting of the minds” necessary for an accord and satisfaction.  We
defer to the trial court’s findings of fact that there was not sufficient
intent that a new agreement was formed.  We find that the trial court did not
err in its finding of no accord and satisfaction as a matter of law and that
this finding is not against the great weight of the evidence.  We overrule
Mustang’s issue number VI.

Equitable Damages

            Mustang complains that the trial court
erred in granting Sinclair an offset for rent Sinclair paid to Mustang pursuant
to the leases after the date for the original closing as well as an offset for
lost rentals on the trailer park based on the error in the award of specific
performance.  Mustang also complains of the equitable offset for the wrongful
injunction and the award of attorney’s fees.  Mustang offers no authorities in
support of its position.  Because we believe that the trial court did not err
in awarding specific performance, we overrule this issue.  See Byram
v. Scott, No. 03-07-00471-CV, 2009 LEXIS 5105 at *13 (Tex. App.—Austin July 1, 2009, no pet h.).  However, even if there was error, this complaint is
inadequately briefed, and therefore, waived.  See Tex. R. App. P. 38.1(i).  We overrule
Mustang’s issue number VII. 

Tortious Interference with Business Relations

            The elements of tortious interference
with prospective business relations are: (1) a reasonable probability that the
plaintiff would have entered into a contractual relationship; (2) an
independently tortious or unlawful act by the defendant that prevented the
relationship from occurring; (3) the defendant did the act with a conscious
desire to prevent the relationship from occurring or with knowledge that the
interference was certain or substantially certain to occur as a result of his
conduct; and (4) the plaintiff suffered actual harm or damage as a result of
the interference.  See Ash v. Hack Branch Distrib. Co., 54 S.W.3d
401, 414-15 (Tex. App.—Waco 2001, pet. denied).  See also Finlan v. Dallas Indep. Sch. Dist., 90 S.W.3d 395, 412 (Tex. App.—Eastland 2002, pet. denied).

            "Lost profits are damages for the
loss of net income to a business measured by reasonable certainty."  Miga
v. Jensen, 96 S.W.3d 207, 213 (Tex. 2002).  See also Bossier Chrysler
Dodge II, Inc. v. Rauschenberg, 201 S.W.3d 787, 808 (Tex. App.—Waco 2006) rev'd
in part, 238 S.W.3d 376 (Tex. 2007) (per curiam).  "Net profits"
is defined as "what remains in the conduct of a business after deducting
from its total receipts all of the expenses incurred in carrying on the
business."  Turner v. PV Int'l Corp., 765 S.W.2d 455, 465 (Tex.
App.—Dallas 1988, writ denied) (citing R. A. Corbett Transp., Inc. v. Oden,
678 S.W.2d 172, 176 (Tex. App.—Tyler 1984, no writ).  

"Exact calculations" are not required to
recover for lost profits.  Helena Chem. Co. v. Wilkins, 47 S.W.3d 486,
504 (Tex. 2001).  "At a minimum [however], opinions or lost-profit
estimates must be based on objective facts, figures, or data from which the
lost-profits amount may be ascertained."  Id.

            A report filed with the Texas Alcohol
and Beverage Commission was admitted showing gross sales of alcohol for one
month for the country and western bar.  Sinclair further testified that the
average amount of gross sales of alcohol for the country and western bar was
$8,000-$9,000 per month, which totaled $128,000 from the time the club closed
until the time of trial.  Sinclair admitted that this number was a gross number
and did not include his expenses to operate the club.  No evidence was offered
as to what the operating expenses of the country and western club were on a
monthly basis.  Thus, Sinclair failed to provide sufficient "facts,
figures, or data" from which the factfinder could ascertain lost net profits.
 See Texaco, Inc. v. Phan, 137 S.W.3d 763, 771-773 (Tex. App.—Houston [1st
Dist.] 2004, no pet.).  Without such proof, the evidence is legally
insufficient to support the trial court’s award of $50,000 for tortious
interference with business relations.  See Bossier Chrysler Dodge II,
201 S.W.3d at 808.  We sustain Mustang’s issue number VIII.

Breach of Lease Agreement

            Mustang complains that the trial court
erred by denying its counterclaim as a matter of law against Sinclair for
failing to pay rent from July 1, 2005 until January of 2006 pursuant to the
terms of the lease agreements and for denying an award of attorney’s fees for
the breach of the lease agreement.  Mustang contends that any oral modification
of the lease agreement violates the Statute of Frauds, and is, therefore,
invalid.  See Tex. Bus. &
Com. Code Ann. § 26.01 (Vernon 2002).  In its findings of fact, the
trial court found that Bill McKie had orally agreed with Sinclair that Sinclair
would not be responsible for paying rent pursuant to the leases until the
matter of the Carter liens was cleared up, and that this oral agreement had
been corroborated by his inaction in pursuing collection of the rents after
July 1, 2005.  Prior to this time, Bill McKie had personally come to the club on
many occasions to collect the rent from Sinclair during the pendency of the
leases.  After July 1, 2005, however, the trial court found in its findings of
fact that Bill McKie made no efforts to collect the rent as he had prior to the
original date set for closing.  

            However, even if Mustang were able to
prevail on a breach of the lease agreement, we affirm the trial court’s
conclusion based on its findings of fact regarding the alleged breach of the
contract for the sale of the land and the equitable offset granted by the trial
court restoring the rents actually paid by Sinclair back to him.  See
Material P'ships, Inc. v. Ventura, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied) (incorrect conclusions of law do not require reversal
if the controlling findings of fact support the judgment under a correct legal
theory.).  The trial court has the
discretion to place the parties in an economic position equivalent to their
having performed the contract according to its terms by balancing the
equities.  See Byram v. Scott, No. 03-07-00471-CV, 2009 LEXIS 5105 at
*13 (Tex. App.—Austin July 1, 2009, no pet h.).  As such, we do not need to
reach whether the oral modification of the lease violated the Statute of
Frauds.  

Attorney’s Fees

            Mustang also complains of the trial
court’s failure to award attorney’s fees for the breach of the lease
agreement.  Although a prevailing party to a contract suit is entitled to
attorneys' fees, the prevailing party is typically the party who either
successfully prosecutes the action or successfully defends against it,
prevailing on the main issue.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2007).  See also
Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc., 149 S.W.3d 863,
867 (Tex. App.—Dallas 2004, no pet.).  In other words, the prevailing party is
the one vindicated by the judgment.  Id.  We find that Mustang is not
the prevailing party on the main issue in this case, that being the award of
specific performance, and therefore is not entitled to an award of attorney’s
fees.  We overrule Mustang’s issue number IX.

Conclusion
            We find the
evidence was legally insufficient to support the award of $50,000 for tortious
interference with business relations.  Therefore, we reverse and render that
Sinclair take nothing on that portion of the judgment.  We affirm the judgment
of the trial court in all other respects.   

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed in part/Reversed
and rendered in part

Opinion delivered and
filed October 28, 2009

[CV06]









[1]
In its brief on the merits, what Mustang has labeled as Issue I sets forth the
relevant standards of review for purposes of its subsequent issues, but does
not set forth an issue for us to address.  In order to avoid confusion for the
parties, we have used the precise numbering used by Mustang in its brief in
identifying each issue in this opinion.